No. 54 December 10, 2015 413

IN THE SUPREME COURT OF THE
STATE OF OREGON

Donald L. ROBERTS,
individually and on behalf of
all others similarly situated,
*Plaintiff-Adverse Party,*

*v.*

TRIQUINT SEMICONDUCTOR, INC.;
Ralph G. Quinsey; Steven J. Sharp;
Charles Scott Gibson; David Ho;
Nicolas Kauser; Roderick Nelson;
Walden C. Rhines; and Willis C. Young,
*Defendants-Relators,*

*and*

RF MICRO DEVICES, INC.,
*Defendant.*

Marina LAM,
individually and on behalf of
all others similarly situated,
*Plaintiff-Adverse Party,*

*v.*

Steven J. SHARP;
Ralph G. Quinsey; Charles Scott Gibson;
David Ho; Nicolas Kauser; Roderick Nelson;
Walden C. Rhines; Willis C. Young;
and TriQuint Semiconductor, Inc.,
*Defendants-Relators,*

*and*

RF MICRO DEVICES, INC.;
Rocky Merger Sub, Inc.; Trident Merger Sub, Inc.;
and Rocky Holding, Inc.,
*Defendants.*

(CC 1402-02441, 1403-02757; SC S062642)

En Banc

Original proceeding in mandamus.*

Argued and submitted June 16, 2015.

Sarah J. Crooks, Perkins Coie LLP, Portland, argued the cause and filed the brief for defendants-relators. With her on the brief were Ronald L. Berenstain and Sean C. Knowles.

Scott A. Shorr, Stoll Stoll Berne Lokting & Shlachter P.C., Portland, argued the cause for plaintiffs-adverse parties. Mark A. Friel, Stoll Stoll Berne Lokting & Schlachter P.C., and Kim T. Buckley, Esler Stephens & Buckley, Portland, filed the brief. With them on the brief were Gary M. Berne, Stoll Stoll Berne Lokting & Schlachter P.C.; Michael J. Esler, Esler Stephens & Buckley; David T. Wissbroecker and Maxwell R. Huffman, Robbins Geller Rudman & Dowd LLP, San Diego, California; and Kent Bronson, Todd Kammerman, and Christopher Schuyler, Milberg LLP, New York, New York.

Bridget Donegan, Larkins Vacura LLP, Portland, and Leslie A. Brueckner, Public Justice, P.C., Oakland, California, filed the brief for *amici curiae* Oregon Trial Lawyers Association and Public Justice, P.C.

KISTLER, J.

Peremptory writ to issue.

_____

* On petition for alternative writ of mandamus from an order of Multnomah County Circuit Court, Michael A. Greenlick, Judge.

**KISTLER, J.**

TriQuint Semiconductor, Inc., and its directors (collectively TriQuint) are defendants in two consolidated shareholder derivative suits filed in Multnomah County.[1] TriQuint moved to dismiss those suits on the ground that its corporate bylaws establish Delaware as the exclusive forum for shareholder derivative suits. The trial court denied TriQuint's motion to dismiss, and we allowed TriQuint's petition for an alternative writ of mandamus. We now conclude that, as a matter of Delaware law, TriQuint's bylaw is a valid forum-selection clause and binds its shareholders. We also conclude that, as a matter of Oregon law, the bylaw is enforceable. We accordingly issue a peremptory writ of mandamus directing the trial court to grant TriQuint's motion to dismiss.

The relevant facts are either undisputed or established by the trial court's order.[2] TriQuint is a Delaware corporation headquartered in Hillsboro, Oregon. TriQuint designs and manufactures radio frequency products used in a number of high-technology industries. Late in February 2014, TriQuint's board of directors amended the company's bylaws to designate the Delaware Court of Chancery as the exclusive forum for resolving internal corporate disputes, including shareholder derivative suits.[3] The board adopted the bylaw pursuant to TriQuint's certificate of incorporation, which allows the board of directors to "adopt, amend, or repeal" the company's bylaws unilaterally. *See* Amended and Restated Bylaws of TriQuint Semiconductor, Inc., Art X

---

[1] Other defendants were named in the consolidated suits but are not relators in this mandamus proceeding.

[2] TriQuint filed its motion to dismiss under ORCP 21 A(1), and the trial court noted that, in resolving that motion, it could rely on facts drawn from the complaint and matters outside the pleadings, including affidavits, declarations, and other evidence. *See Black v. Arizala*, 337 Or 250, 265, 95 P3d 1109 (2004) (so stating). The parties do not challenge the historical facts set out in the trial court's order, and we assume that those facts are correct.

[3] The bylaw provides that "the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for" resolving, among other things, shareholder derivative suits, claims for breach of fiduciary duty, violation of the Delaware General Corporation Law, and violation of TriQuint's bylaws, and claims governed by the internal affairs doctrine. Amendment to Second Amended and Restated Bylaws of TriQuint Semiconductor, Inc., Art XI.

(allowing board to unilaterally alter bylaws as long as certificate of incorporation authorizes that action); Amended and Restated Certificate of Incorporation of TriQuint Semiconductor, Inc. (NINTH) (so authorizing).

Two days after the board adopted the forum-selection bylaw, TriQuint announced plans to merge with RF Micro Devices, Inc. Each corporation's board of directors unanimously approved the merger. Some of TriQuint's shareholders objected to the merger, however. They filed two shareholder derivative suits in Oregon and three similar suits in Delaware.

Roberts, acting as the representative of a proposed class of TriQuint's shareholders, filed a derivative suit in Multnomah County Circuit Court shortly after the board approved the merger. The complaint alleged that TriQuint's directors had breached their fiduciary duties to the corporation by approving the merger and that TriQuint had aided and abetted the breach. Specifically, the complaint alleged that the merger benefitted TriQuint's board members by giving them lucrative board positions in the new corporation in exchange for selling TriQuint stock at below-market prices. Lam filed a second, similar class action the following month in Multnomah County Circuit Court. The suits filed by Roberts and Lam (plaintiffs) were consolidated. Three other TriQuint shareholders filed derivative class action suits in the Delaware Chancery Court, alleging a breach of fiduciary duty on the part of TriQuint's directors in connection with the merger.

TriQuint moved to dismiss the consolidated suits filed in Oregon. Among other things, TriQuint argued that its bylaws designate the Delaware Court of Chancery as the exclusive forum in which shareholder derivative suits can be filed. The trial court denied TriQuint's motion. The trial court recognized that Delaware law authorized TriQuint's board to unilaterally adopt a binding forum-selection bylaw. The court noted, however, that Delaware law also authorized TriQuint's shareholders to modify or repeal the company's bylaws. The trial court reasoned that adopting the forum-selection bylaw contemporaneously with the merger effectively deprived TriQuint's shareholders of their

statutory right to repeal the forum-selection bylaw. The court explained that "[f]orcing the plaintiffs to proceed in Delaware would force them to accept the [forum-selection] bylaw" in contravention of their rights under Delaware corporate law to modify or repeal the bylaws adopted by the board. The trial court accordingly declined to enforce the bylaw. TriQuint petitioned for an alternative writ of mandamus, which we issued.

The question whether a trial court should dismiss an action on the basis of a forum-selection agreement "is a legal determination" that may be raised by way of an ORCP 21 A(1) motion to dismiss. *Black v. Arizala*, 337 Or 250, 264, 95 P3d 1109 (2004); *see also Reeves v. Chem. Industrial Co.*, 262 Or 95, 101, 495 P2d 729 (1972) (holding that an Oregon court "will dismiss [an] action" when governed by a valid, enforceable forum-selection clause). A party may bring a mandamus action to enforce a forum-selection agreement when a trial court's decision not to enforce the agreement falls outside the trial court's permissible range of discretion. *Cf. Kohring v. Ballard*, 355 Or 297, 301-02, 325 P3d 717 (2014) (holding that mandamus is appropriate when trial court had no discretion to deny change-of-venue motion).

Ordinarily, a forum-selection clause will be part of a larger contractual agreement. *See, e.g.*, *Reeves*, 262 Or at 96-97 (considering such an agreement). Often, the parties will not dispute the validity of the larger agreement but instead will dispute whether it would be unreasonable or unfair to enforce the forum-selection clause included in the agreement. *See id.* at 98 (stating that standard). In that instance, the law of the forum in which the action was filed governs the decision whether a forum-selection clause will be enforced. *See id.* at 97, 101 (applying Oregon law in deciding whether to enforce a forum-selection clause designating Ohio as the exclusive forum, even though the contract also included a choice-of-law provision stating that Ohio law would govern the action); *cf.* Kevin M. Clermont, *Governing Law on Forum-Selection Agreements*, 66 Hastings LJ 643, 649-50 (2015) (explaining that most jurisdictions use the law of the forum in determining whether forum-selection clauses should be enforced).

This case does not arise in that usual posture. Rather, TriQuint relies on a forum-selection bylaw adopted by its board of directors. And plaintiffs argue that the bylaw is itself invalid, as a matter of Delaware law, either because the directors breached their fiduciary duty in enforcing the bylaw or because applying the bylaw in this case would be unreasonable under a test that the United States Supreme Court announced in *The Bremen v. Zapata Off-Shore Co.*, 407 US 1, 92 S Ct 1907, 32 L Ed 2d 513 (1972), and that the Delaware Chancery Court adopted in *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A3d 934 (Del Ch 2013). Alternatively, plaintiffs argue that the trial court correctly concluded that, as a matter of Oregon law, it would be unreasonable or unfair to enforce the bylaw.

In considering plaintiffs' arguments, we first briefly discuss Delaware law regarding forum-selection bylaws. We then consider plaintiffs' argument that the board breached its fiduciary duty either in adopting or in relying on the forum-selection bylaw in the circumstances of this case. Finally, we consider plaintiffs' argument that it would be unreasonable or unfair under either the United States Supreme Court's decision in *Bremen* or this court's decision in *Reeves* to enforce the forum-selection bylaw in the consolidated derivative suits filed in Multnomah County.

The Delaware courts have held that a corporation's board of directors can unilaterally adopt a forum-selection bylaw, which will bind shareholders contractually. Specifically, a Delaware corporation may "confer the power to adopt, amend or repeal bylaws upon the directors." 8 Del C § 109(a). Those bylaws are a contract between the corporation and its shareholders. *See Airgas, Inc. v. Air Prod. & Chem., Inc.*, 8 A3d 1182, 1188 (Del 2010) (explaining that "[c]orporate charters and bylaws are contracts among a corporation's shareholders"). Although a corporation's bylaws may address only certain statutorily prescribed subjects, *see* 8 Del C § 109(b), forum-selection bylaws regarding internal corporate governance—such as shareholder derivative suits—come within the subjects that a corporation's bylaws may address. *Chevron*, 73 A3d at 951-55.

The Delaware Chancery Court accordingly held in *Chevron* that a board-adopted forum-selection bylaw was a facially valid contract that bound the corporations' shareholders. *Id.* Having recognized that the bylaw was facially valid, the court also recognized that it was possible that a forum-selection bylaw could be invalid as applied. The court explained that a shareholder could argue that, "under *Schnell* [*v. Chris-Craft Indus., Inc.*, 285 A2d 437 (Del 1971)], the forum-selection clause should not be enforced because the bylaw was being used for improper purposes inconsistent with the directors' fiduciary duties." *Chevron,* 73 A3d at 958; *see Black v. Hollinger Int'l, Inc.*, 872 A2d 559, 564 (Del 2005) (explaining that facially valid bylaws were nevertheless "invalid in equity and of no force and effect, because they had been adopted for an inequitable purpose and had an inequitable effect"). Alternatively, the court explained that a shareholder could argue that, under *Bremen*, a forum-selection bylaw was invalid as applied because it was the result of "fraud, undue influence, or overweening bargaining power" or because enforcement would be "unreasonable." *Chevron*, 73 A3d at 957 (citation omitted). Having noted the possibility that a forum-selection bylaw could be invalid as applied, the court limited its holding to the conclusion that forum-selection bylaws were facially valid under Delaware law. *Id.* at 963.

Given *Chevron*, plaintiffs do not dispute that TriQuint's forum-selection bylaw is facially valid. They argue, however, that the bylaw is invalid as applied in this case because it "[i]s being used for improper purposes inconsistent with the directors' fiduciary duties." *Chevron*, 73 A3d at 958. Alternatively, they argue that the bylaw is unenforceable or unfair under *Bremen* or *Reeves* primarily because giving effect to the bylaw would deprive TriQuint's shareholders of their statutory right to amend the bylaws. We begin with plaintiffs' first argument.

Whether TriQuint's board adopted the forum-selection bylaw in violation of its fiduciary duties is a question of Delaware law. Two Delaware cases bear on that issue: *Schnell* and *City of Providence v. First Citizens BancShares, Inc.*, 99 A3d 229 (Del Ch 2014). *Schnell* did not involve a

forum-selection bylaw. Rather, in *Schnell*, a group of dissident shareholders notified the Securities and Exchange Commission that they intended to wage a proxy contest against the defendant corporation's current management. *Schnell*, 285 A2d at 439. In response, the corporation's board withheld critical information from the dissident shareholders; it also amended the corporation's bylaws to advance the date of the annual shareholders' meeting and to designate a relatively remote location for the shareholders' meeting. *See Schnell v. Chris-Craft Indus., Inc.*, 285 A2d 430, 432 (Del Ch) (setting out board's actions), *rev'd*, 285 A2d 437 (Del 1971).

Although the board's actions in amending the bylaws were technically permissible under Delaware law, the Delaware Supreme Court concluded that the board improperly had used the "corporate machinery and the Delaware Law for the purpose of perpetuating itself in office[.]" *Schnell*, 285 A2d at 439. Specifically, the dissident shareholders needed time to rally support to have a realistic chance of prevailing in their proxy contest, and the court determined that the board had "advance[d] the date [of the shareholder meeting] in order to obtain an inequitable advantage in the contest." *Id.* That inequitable conduct rendered what otherwise would have been a valid bylaw inequitable and unenforceable. *See id.* Citing *Schnell*, the court observed in *Chevron* that, if a board adopts a forum-selection bylaw in violation of its fiduciary duty to the shareholders, the bylaw is invalid and may not be enforced. *Chevron*, 73 A3d at 959.

The Delaware Chancery Court's opinion in *First Citizens* also bears on this issue.[4] In *First Citizens*, the board of a North Carolina bank incorporated in Delaware unilaterally adopted a forum-selection bylaw designating North Carolina as the exclusive forum for resolving internal corporate disputes, including shareholder derivative suits. The same day that the board adopted the bylaw, it announced that it had agreed to a merger with a bank holding company. 99 A3d at 230-31. A shareholder filed a derivative suit in

---

[4] Because the trial court issued its order in this case before *First Citizens* was issued, the trial court did not have the benefit of the Delaware Chancery Court's analysis in that case.

the Delaware courts challenging both the forum-selection bylaw and the merger. The shareholder alleged that the board had breached its fiduciary duty to the shareholders in adopting the forum-selection bylaw because the board had been "'motivated by a desire to protect the interests of the individual members'" and "'to insulate itself from the jurisdiction of Delaware courts.'" *Id.* at 237 (quoting complaint).

The Chancery Court rejected the plaintiff's breach of fiduciary duty claim. It reasoned that designating North Carolina as the exclusive forum for shareholder derivative suits "d[id] not insulate the Board's approval of the proposed merger from judicial review." *Id.* The court previously had rejected the idea that only Delaware had the expertise to adjudicate matters of Delaware corporate law, and it noted the absence of any "well-pled facts to call into question the integrity of the * * * courts of North Carolina or to explain how the defendants are advancing their 'self-interests' by having claims [challenging the merger] adjudicated in those courts as opposed to the courts of Delaware." *Id.* Applying Delaware law, the court granted the defendant's motion to dismiss, reasoning that the plaintiff had failed to rebut the board's exercise of its business judgment in adopting the forum-selection bylaw or to show that the board's "selection of North Carolina as the exclusive forum was irrational." *Id.*

Although plaintiffs argue that *Schnell* governs their claim in this case, we think that *First Citizens* is the more applicable precedent. In *Schnell*, the board refused to give the plaintiffs access to shareholder lists, unilaterally accelerated the date of the annual shareholder meeting, and moved the meeting to a remote location in upstate New York. Given those facts, the court found that the board had acted with the purpose and effect of frustrating the plaintiffs' attempts to wage an effective proxy context. This case, by contrast, is far closer to *First Citizens*. It is true that the TriQuint board adopted the forum-selection bylaw making Delaware the exclusive forum for resolving disputes contemporaneously with its approval of the merger. But that was true in *First Citizens* as well.[5] To paraphrase the court's

---

[5] Unlike *First Citizens*, plaintiffs have not alleged in this case that the board breached its fiduciary duty in adopting the forum-selection bylaw.

reasoning in *First Citizens*, TriQuint's forum-selection bylaw does not prevent its shareholders from challenging the merger. It only provides where they may do so. Not only does the forum-selection bylaw keep TriQuint's assets from being diluted by a multiplicity of suits in various states, but Delaware, the state in which TriQuint is incorporated, is the "most obviously reasonable forum [for internal affairs cases because those cases] *** will be decided in the courts whose Supreme Court has the authoritative final say as to what the governing law means[.]" *Chevron*, 73 A3d at 953. Guided by *First Citizens* and *Chevron*, we conclude that TriQuint's forum-selection bylaw is not invalid or unenforceable under Delaware law as a breach of the board's fiduciary duty.

The remaining question is whether the trial court erred in not giving effect to TriQuint's forum-selection bylaw. As noted, the trial court reasoned that applying the bylaw in these circumstances would effectively deprive TriQuint's shareholders of their statutory right to modify or repeal the bylaw. The Delaware Chancery Court addressed a similar issue in *First Citizens*. As noted, in that case, First Citizens' board adopted a forum-selection bylaw the same day that it announced a merger with another company. The plaintiff in *First Citizens* argued that it would be unjust to apply the forum-selection bylaw to it because it "effectively lack[ed] the ability to repeal" the bylaw since it did not control a majority of the corporation's shares. 99 A3d at 241.

In considering that argument, the Delaware Chancery Court noted that *Chevron* had explained "that a board-adopted forum selection bylaw, much like any board-adopted bylaw, is 'subject . . . to the most direct form of attack by stockholders who do not favor them: stockholders can simply repeal them by a majority vote.'" *Id.* (quoting *Chevron*, 73 A3d at 954). The Chancery Court explained in *First Citizens*, however, that it "d[id] not interpret either the [Delaware General Corporate Law] or *Chevron* to mandate that a board-adopted forum selection bylaw can be applied only if it is realistically possible that stockholders may repeal it." *Id.* To hold otherwise, the court explained, "would *** be tantamount to rendering questionable all board-adopted bylaws of controlled corporations." *Id.* at 241-42 (internal

quotation marks omitted). Rather, the court explained, a shareholder's remedy against enforcing a board-adopted forum-selection bylaw lies primarily in arguing that a forum-selection bylaw runs afoul of *Schnell*. *Id*. at 242.

*First Citizens* did not consider the specific issue presented here. The shareholders in that case did not argue that the forum-selection bylaw should not be given effect because the shareholders did not have time to modify or repeal the bylaw. The court's reasoning, however, provides persuasive guidance on that issue. As a matter of Delaware law, the court in *First Citizens* gave effect to a board-adopted bylaw even though it was not "realistically possible that stockholders may repeal it." *Id*. at 241. Put differently, the fact that shareholders lacked either the votes or, by inference, the time to override a board-adopted bylaw did not mean that the bylaw should not be given effect. Rather, as a matter of Delaware law, a board-adopted bylaw will be given effect until the shareholders modify or repeal it, unless the board lacked authority to adopt it or the board breached its fiduciary duty in adopting it. To hold otherwise would effectively read out of Delaware law a corporate board's authority to adopt bylaws unilaterally because there always will be a gap between the time that a board adopts a bylaw and the time that shareholders have an opportunity to modify or repeal it.[6]

With *First Citizens*' reasoning in mind, we turn to plaintiffs' arguments that it would be unreasonable or unfair, under *Bremen* and *Reeves*, to give effect to the forum-selection bylaw that TriQuint's board adopted. We start with *Bremen*.

As noted above, *Chevron* held that courts should look to the criteria laid out in *Bremen*, 407 US at 10-15, to determine whether a forum-selection bylaw is invalid as applied under Delaware law. *See Chevron*, 73 A3d at 957. The question in *Bremen* was whether a federal district court in Florida should give effect to a forum-selection clause that

---

[6] A contrary conclusion would effectively revive the vested rights doctrine, which Delaware has abandoned. *See Kidsco, Inc. v. Dinsmore*, 674 A2d 483, 492 (Del Ch 1995) (explaining that "where a corporation's by-laws put all on notice that the by-laws may be amended at any time, no vested rights can arise that would contractually prohibit an amendment") (citation omitted).

designated London as the exclusive forum for resolving certain maritime disputes.[7] In *Bremen*, the United States Supreme Court started from the proposition that forum-selection agreements are presumptively valid and "should control absent a strong showing that [the forum-selection agreement] should be set aside." 407 US at 15. The Court observed that a party challenging a forum-selection agreement could show that enforcing the agreement would be "unreasonable," that the agreement was the product of "fraud, undue influence, or overweening bargaining power," or that "enforcement would contravene a strong public policy of the forum in which suit is brought[.]" *Id*. at 10, 12, 15.

Before considering how those criteria apply here, we note an analytical issue that *Chevron*'s reasoning raises.[8] To the extent that *Chevron* reasoned that Delaware courts should use the *Bremen* criteria to determine when those courts should not give effect to a forum-selection bylaw that designates a different jurisdiction as the exclusive forum, the court's reasoning is unexceptionable. To the extent that *Chevron* reasoned that other states should use the *Bremen* criteria to make that determination, we question whether one state can specify the criteria that another state must use to make that determination. The question of which state's law applies to a forum-selection clause is one for the forum state. *See Reeves*, 262 Or at 101; Clermont, *Governing Law on Forum-Selection Agreements*, 66 Hastings LJ at 652-64 (discussing how forum states should resolve that issue when contracts include choice-of-law provisions). To the extent that *Chevron* held that, under Delaware law, a forum-selection bylaw is invalid as-applied unless it complies

---

[7] The claim in *Bremen* arose under the federal courts' admiralty jurisdiction and involved a dispute over damage that occurred to vessels involved in international trade. 407 US at 3-4. Although the Court noted that it was deciding "the correct doctrine to be followed by federal district courts sitting in admiralty" and emphasized the implications for "international trade" raised by the parties' "international commercial agreement," *id*. at 10, 13, 16, *Bremen*'s rationale has not been confined to admiralty or international contract disputes. *See TradeComet.com LLC v. Google, Inc.*, 647 F3d 472, 476 (2d Cir 2011) ("*Bremen* * * * did not create a narrow rule holding forum selection clauses to be *prima facie* valid solely in admiralty cases, or those involving international agreements, but rather approved of a pre-existing favorable view of such clauses.").

[8] We say "reasoning" because *Chevron*'s discussion of when a forum-selection clause will be invalid as applied was technically not part of its holding.

with the *Bremen* criteria, that statement of Delaware law is one we must respect. And that appears to be what *Chevron* says.[9] Although we might question, for the reasons noted below, whether that is what *Chevron* meant, we turn to an application of the *Bremen* criteria.

The first criterion is whether it would be "unreasonable" for Oregon to apply TriQuint's forum-selection bylaw designating Delaware as the exclusive forum in which shareholder derivative suits may be brought. *See Bremen*, 407 US at 510. The primary reason that plaintiffs have identified that it would be unreasonable to give effect to TriQuint's bylaw is that doing so would effectively deny the shareholders' statutory right to modify or amend the bylaws. As explained above, however, the Delaware courts have concluded, in an analogous context, that a shareholder's inability to exercise that statutory right does not provide a basis for refusing to give effect to a forum-selection bylaw. *First Citizens*, 99 A3d at 241-42. Plaintiffs have identified no persuasive basis for this court to second-guess the Delaware court's assessment of that Delaware statutory right, nor is it our role to instruct the Delaware courts on the meaning of Delaware law.

The second *Bremen* criterion is whether the forum-selection bylaw was the result of "fraud, undue influence, or overweening bargaining power." *Bremen*, 407 US at 12. That criterion has little or no application to a bylaw that Delaware law permits a board to adopt unilaterally. Put differently, if a forum-selection bylaw that a corporate board unilaterally adopts is facially valid, as *Chevron* held, then it is difficult to see why the second criterion that *Bremen* identified provides a reason for not giving effect to that bylaw.

The third *Bremen* criterion is whether "enforcement would contravene a strong public policy of the forum in

---

[9] *Chevron* expressly states that a plaintiff who files in a different jurisdiction from the one designated in a forum-selection bylaw can rely on the *Bremen* criteria to argue that the bylaw should not be enforced. *See* 73 A3d at 958-59. Because Delaware cannot require another jurisdiction to use the *Bremen* criteria to determine whether a forum-selection bylaw is enforceable, *Chevron* presumably viewed the *Bremen* criteria as bearing on whether the bylaw is invalid as applied as a matter of Delaware law.

which suit is brought[.]" *Id.* at 15. If, as *Chevron* appears to hold, the *Bremen* criteria are relevant to determining, as a matter of Delaware law, whether a forum-selection bylaw is invalid as applied, the third *Bremen* criterion poses logical difficulties. In this case, that criterion, read literally, would direct an Oregon court to analyze Oregon public policy to decide whether a forum-selection bylaw is invalid as a matter of Delaware law. That analytical difficulty causes us to think that *Chevron* intended only for Delaware courts to use the *Bremen* criteria to determine whether to give effect to a forum-selection bylaw that designates another jurisdiction as the exclusive forum.[10]

In any event, Oregon has no interest in giving greater effect to a Delaware corporation shareholder's right to modify or repeal board-adopted bylaws than Delaware would. And *First Citizens* teaches that a practical inability to exercise that Delaware statutory right does not provide a basis for refusing to give effect to a forum-selection bylaw. Plaintiffs have identified no policy reason that would warrant holding TriQuint's forum-selection bylaw invalid, as applied, under Delaware law.

Having concluded that TriQuint's forum-selection bylaw is valid under Delaware law, we turn to whether it is enforceable under Oregon law. Before 1972, this court took a dim view of forum-selection clauses. *See State ex rel Kahn v. Tazwell*, 125 Or 528, 266 P 238 (1928). This court viewed forum-selection agreements as attempts to "oust" Oregon courts of jurisdiction and held them void. *See id.* at 543 (reasoning that jurisdiction "cannot be diminished or increased by the convention of the parties"). In *Reeves*, however, this court recognized that "[t]he present trend of the law * * * is to the contrary" and held that forum-selection clauses are

---

[10] TriQuint faults the trial court for considering the *Bremen* criteria because this court has not adopted them under Oregon law. We agree that this court has not adopted the *Bremen* criteria, although they do not appear that different from the criteria that *Reeves* identified. We also doubt that Delaware can require Oregon courts to use those criteria—as opposed to Oregon law—in deciding whether to give effect to a forum-selection clause. However, to the extent that *Chevron* concluded that a forum-selection bylaw will be invalid as applied, as a matter of Delaware law, then the trial court properly considered those criteria. As discussed above, however, the *Bremen* criteria are ill-suited for that use.

presumptively valid unless "unfair or * * * unreasonable."[11] 262 Or at 100-01. Addressing the jurisdictional concerns of *Tazwell*, this court explained in *Reeves* that "we are not holding that [the forum-selection] clause 'ousted' the Oregon court from jurisdiction." *Id.* at 101. Rather, even when an Oregon court has jurisdiction over the parties and the subject matter, that court "will dismiss [an] action" subject to a forum-selection clause, as long as the clause is "valid and should be enforced."[12] *Id.*

In *Reeves*, this court identified circumstances in which enforcing a forum-selection clause will be unfair or unreasonable that parallel the criteria that the Court identified in *Bremen*. The court explained in *Reeves* that "[c]lauses in * * * contracts of adhesion" that are "the product of unequal bargaining power between the parties" fall within the category of "unfair or unreasonable" forum-selection agreements. 262 Or at 101 (internal quotation marks and citation omitted). This court also noted a comment in the Restatement in which the reporter explained that a forum-selection agreement should "'be disregarded if it is the result of overreaching or of the unfair use of unequal bargaining power or if the forum chosen by the parties would be a seriously inconvenient one for the trial of the particular action.'" *Id.* at 98 (quoting 1 *Restatement (Second) of Conflict of Laws* § 80 cmt a (1969)).

For the most part, plaintiffs' arguments under *Reeves* parallel their arguments under *Bremen*, which we already have considered. Plaintiffs and *amici* advance an additional argument under *Reeves*, however, that warrants discussion. They note that Oregon does not enforce contracts

---

[11] *Reeves* preceded *Bremen* by a matter of months and fit within a larger trend of cases recognizing forum-selection clauses as presumptively valid. *See, e.g.*, *Manrique v. Fabbri*, 493 So2d 437, 440 (Fla 1986) (adopting that analysis); *U.S. Trust Co. v. Bohart*, 197 Conn 34, 43, 495 A2d 1034 (1985) (same); *Volkswagenwerk, A.G. v. Klippan, GmbH*, 611 P2d 498, 504-05 (Alaska 1980) (same); *Davenport Mach. & Foundry Co. v. Adolph Coors Co.*, 314 NW2d 432, 437 (Iowa 1982) (same); *Green v. Clinic Masters, Inc.*, 272 NW2d 813, 815 (SD 1978) (same).

[12] *Reeves* explained that a forum-selection clause does not deprive a court of subject matter jurisdiction, while this court later explained that a party can move to dismiss for lack of subject matter jurisdiction based on a forum-selection clause. *See Black*, 337 Or at 263-64.

that are unconscionable or otherwise violate public policy. *Bagley v. Mt. Bachelor, Inc.*, 356 Or 543, 553, 340 P3d 27 (2014). Although Delaware permits corporate boards to unilaterally adopt bylaws that constitute contracts between the corporation and the shareholders, plaintiffs argue that Oregon requires mutual assent between contracting parties. In their view, giving effect to Delaware law violates Oregon public policy.

　　　　　We reach a different conclusion. As noted above, Delaware law permits a corporation to "confer the power to adopt, amend or repeal bylaws upon the directors." 8 Del C § 109(a). When that power has been conferred and a corporation's board of directors unilaterally adopts, amends, or repeals the bylaws, "[s]uch a change by the board is not extra-contractual[,] *** rather it is the kind of change that [Delaware's] overarching statutory and contractual regime" contemplates and allows. *Chevron*, 73 A3d at 956. When purchasing stock in a Delaware corporation, shareholders buy into a legal framework that allows corporate directors to unilaterally amend the corporation's bylaws and gives the shareholders the right to repeal those bylaws. Comity and respect for Delaware's corporate law lead us to conclude that, in the absence of compelling public policies to the contrary, we should not interfere with that framework or attempt to regulate the relationship between TriQuint's directors and its shareholders. *See* ORS 60.714(3) (providing that Oregon should not attempt to regulate the internal affairs of foreign corporations);[13] *Tripp v. Pay 'N Pak Stores, Inc.*, 268 Or 1, 518 P2d 1298 (1974) (explaining that an Oregon statute regulating the issuance of stock options did not apply to Washington corporation). We discern no public policy sufficient to overcome that consideration or that would warrant our subjecting the internal relationship between TriQuint and its shareholders to the possibility of inconsistent regulation in different forums. *Cf. CTS Corp. v. Dynamics Corp. of America*, 481 US 69, 88, 107 S Ct 1637, 95 L Ed 2d 67 (1987) (recognizing constitutional limitations on state laws

---

[13] ORS 60.714(3) provides:

　　"[ORS chapter 60] does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state."

that adversely affect interstate commerce by subjecting corporate activities to inconsistent regulations); *Edgar v. MITE Corp.*, 457 US 624, 645-46, 102 S Ct 2629, 73 L Ed 2d 269 (1982) (same).

We also note that proceeding in the Delaware courts will not be "seriously inconvenient" for the parties. *See Reeves*, 262 Or at 98. Plaintiffs have not argued that they lack the financial resources to litigate their derivative claims in the Delaware Court of Chancery, nor have they identified any basis for saying that it would be seriously inconvenient for them to do so. Moreover, the Delaware courts are well-equipped to resolve intra-corporate disputes involving Delaware corporations. Finally, no evidence in the record demonstrates that requiring plaintiffs to pursue their claims in Delaware will infringe their substantive rights, only that they will lose the ability to select the forum in which to exercise those rights.

TriQuint, on the other hand, has the authority to "protect against" the "potential for duplicative law suits in multiple jurisdictions over single events" by channeling those suits to a single forum. *Chevron*, 73 A3d at 953. To that end, TriQuint has chosen to direct such suits to its state of incorporation, the "most obviously reasonable forum" in which to litigate intra-corporate disputes. *Id.* Plaintiffs have not been deprived of their right to challenge the merger, only the ability to challenge the merger in a forum other than Delaware.[14]

In light of the foregoing, enforcing the forum-selection bylaw in this instance is not "unfair or unreasonable" under

---

[14] At oral argument, plaintiffs argued, for the first time, that litigating their derivative claims in the Delaware Chancery Court could deprive them of the right to a jury trial. No party raised that issue in the trial court or briefed it here. Given that posture, we decline to explore the differences, if any, in a party's right to a jury trial in shareholder derivative suits brought in Oregon and Delaware and whether any difference would affect our conclusion. *Cf. Ross v. Bernhard*, 396 US 531, 538, 90 S Ct 733, 24 L Ed 2d 729 (1970) (noting the "dual aspects" of the right to a jury trial in shareholder derivative suits brought in the federal courts: "first, the stockholder's right to sue on behalf of the corporation, historically [is] an equitable matter; second, the claim of the corporation against directors or third parties on which, if the corporation had sued and the claim presented legal issues, the company could demand a jury trial [under the Seventh Amendment].").

Oregon law. *Reeves*, 262 Or at 101. The trial court, while correctly determining that the forum-selection bylaw is facially valid as a matter of Delaware law, erroneously concluded that enforcing the bylaw would run afoul of Oregon public policy. We accordingly hold that a peremptory writ of mandamus directing the trial court to grant TriQuint's motion to dismiss should be issued.

Peremptory writ to issue.