Filed 12/21/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DEAN DRULIAS, | H045049 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 1-16-CV-294673) |
| v. | |
| 1ST CENTURY BANCSHARES, INC., et al., | |
| Defendants and Respondents. | |

This appeal raises the issue of whether a forum selection bylaw adopted by a Delaware corporation without stockholder consent is enforceable in California. The trial court concluded the bylaw was enforceable and, accordingly, stayed this putative shareholder class action under Code of Civil Procedure section 410.30.[1] On appeal, plaintiff and appellant Dean Drulias contends the trial court erred in enforcing the forum selection bylaw, which designates Delaware as the exclusive litigation forum for intra-corporate disputes. He maintains the bylaw conflicts with California law and, alternatively, that its enforcement is unreasonable given the manner and timing of its adoption and defendants' litigation conduct below. Finding those contentions unpersuasive, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

1st Century Bancshares, Inc. (1st Century) was a Delaware corporation headquartered in Los Angeles, California, whose shares were publicly traded on the NASDAQ. On March 10, 2016, 1st Century and Midland Financial Co. (Midland)

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

announced plans to merge. The merger agreement called for Midland to acquire 1st Century for $11.22 in cash per share, a 36.3 percent premium over 1st Century's closing share price on March 10, 2016. The merger was subject to approval by the holders of a majority of 1st Century's outstanding shares. A shareholder vote on the proposed merger agreement was scheduled for June 20, 2016.

1st Century's certificate of incorporation authorized its board of directors "to adopt, alter, amend or repeal" the company's bylaws, "subject to the power of the stockholders of the Corporation to alter or repeal any Bylaws whether adopted by them or otherwise." 1st Century's board of directors exercised its power to amend the bylaws at the time it approved the merger agreement. The board added a forum selection bylaw providing that, absent the corporation's written consent, Delaware is "the sole and exclusive forum for" intra-corporate disputes, including any action asserting a breach of fiduciary duty claim.[2]

---

[2] The forum selection bylaw provides, in full: "Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware (or, if the Court of Chancery does not have jurisdiction, the federal district court for the District of Delaware) shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer, other employee or stockholder of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the DGCL or the Certificate of Incorporation or these Bylaws or as to which the DGCL confers jurisdiction on the Court of Chancery of the State of Delaware, (iv) any action to interpret, apply, enforce or determine the validity of the Certificate of Incorporation or these Bylaws or (v) any action asserting a claim governed by the internal affairs doctrine. Any person purchasing or otherwise acquiring or holding any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Section 5 of this Article VII of these Bylaws. [¶] If any provision or provisions of this Section 5 of this Article VII of these Bylaws shall be held to be invalid, illegal or unenforceable as applied to any person or circumstance for any reason whatsoever, then, to the fullest extent permitted by law, the validity, legality and enforceability of such provision(s) in any other circumstance and of the remaining provisions of this Section 5 of this Article VII of these Bylaws (including, without limitation, each portion of any sentence of this Section 5 of this Article VII of these

Drulias is a California resident and a 1st Century shareholder. On May 3, 2016, he filed a putative class action on behalf of all holders of 1st Century's common stock against 1st Century and its directors (the director defendants). The complaint alleged that 1st Century and the director defendants (collectively, the 1st Century defendants) breached their fiduciary duties in connection with their approval of the merger agreement. Pursuant to a stipulation between the parties, the court, on May 24, 2016, ordered the 1st Century defendants to respond to the complaint on or before July 1, 2016.

On May 25, 2016, Drulias filed an application for a preliminary injunction enjoining the closing of the shareholder vote on the merger until curative disclosures were made to shareholders. The 1st Century defendants opposed that application on June 6, 2016. They argued that the forum selection bylaw required Drulias's claims to be litigated in Delaware and that Drulias's claims lacked merit.

On June 9, 2016, the court entered an order deeming the case complex and staying discovery. That order set a Case Management Conference for September 2, 2016 and ordered that parties not to "file or serve responsive pleadings, including . . . motions for change of venue . . . until a date is set at the First Case Management Conference for such filings and hearings."

Drulias and the 1st Century defendants reached a proposed settlement, which they memorialized in a stipulation of settlement dated June 10, 2016. Under the terms of the proposed settlement agreement, 1st Century agreed to make supplemental disclosures to the SEC and its shareholders in connection with the merger agreement and to pay Drulias's counsel $400,000 in exchange for the settlement and release of the putative class's merger-related claims.

---

Bylaws containing any such provision held to be invalid, illegal or unenforceable that is not itself held to be invalid, illegal or unenforceable) and the application of such provision to other persons and circumstances shall not in any way be affected or impaired thereby."

Shareholders approved the merger on June 20, 2016.

The trial court declined to approve the stipulation of settlement on November 21, 2016. The court reasoned that the settlement was not fair and reasonable to the putative class because the supplemental disclosures were not plainly material, such that they were of minimal value to the class and did not justify the release of all claims associated with the merger.

The parties submitted a joint Case Management Conference statement on December 22, 2016. In it, they indicated that Drulias intended to file a first amended complaint and proposed a January 13, 2017 deadline for that filing. The parties also informed the court that the 1st Century defendants might "file a motion to stay or dismiss for forum non conveniens" and proposed a February 10, 2017 deadline for such a motion. The court adopted the parties' proposed briefing schedule at a January 6, 2017 hearing.

Drulias's first amended complaint, filed on January 13, 2017, added Sandler O'Neill & Partners, L.P. (Sandler), the investment bank that advised 1st Century in connection with the merger, as a defendant. Like the original complaint, the first amended complaint asserted breach of fiduciary duty claims against the 1st Century defendants; it also included an aiding and abetting the breach of fiduciary duties claim against Sandler.

On February 10, 2017, the 1st Century defendants filed a motion to dismiss pursuant to sections 410.30 and 418.10, arguing that the forum selection bylaw requires Drulias's claims be litigated in Delaware. Following briefing and a hearing, the trial court declined to dismiss the action but stayed it under section 410.30. Drulias timely appealed from that order.

## II.    DISCUSSION

### A.    *Background and Governing Law*

Unilaterally adopted forum selection bylaws have become increasingly popular in recent years. (*Boilermakers Local 154 Retirement Fund v. Chevron Corp.* (Del.

4

Ch. 2013) 73 A.3d 934, 944, fn. omitted (*Boilermakers*) ["in the last three years, over 250 publicly traded corporations have adopted such provisions"].) In *Boilermakers*, the Delaware Court of Chancery ruled that such bylaws are facially valid under Delaware law. Their enforceability has been litigated across the country,[3] but California state courts have yet to consider the issue.

The parties agree that Delaware law governs Drulias's breach of fiduciary duty claims under the internal affairs doctrine, which "generally requires application of the law of the state of incorporation to any dispute regarding relations between the corporation and its shareholders or officers and directors." (*The Police Retirement System of St. Louis v. Page* (2018) 22 Cal.App.5th 336, 340.) They also agree that the issue of the forum selection bylaw's validity is governed by Delaware law. (*Boilermakers*, *supra*, 73 A.3d at p. 938 ["a foreign court that respects the internal affairs doctrine, as it must, when faced with a motion to enforce the bylaws will consider, as a first order issue, whether the bylaws are valid under the 'chartering jurisdiction's domestic law,' " fns. omitted].) And Drulias does not contest the bylaw's validity under Delaware law. At issue is whether California law renders the otherwise valid bylaw unenforceable in this state.

### B. Legal Principles

The proper procedure for enforcing a contractual forum selection clause in California is a motion pursuant to section 410.30.[4] (*Berg v. MTC Electronics*

---

[3] See *Roberts v. TriQuint Semiconductor, Inc.* (2015) 358 Or. 413 (*Roberts*) [holding forum selection bylaw enforceable under Oregon law]; *North v. McNamara* (S.D. Ohio 2014) 47 F.Supp.3d 635 (*North*) [holding forum selection bylaw enforceable under federal law]; *Butorin on behalf of KBR Inc. v. Blount* (S.D. Tex. 2015) 106 F.Supp.3d 833 [same].

[4] Section 410.30, subdivision (a), provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

*Technologies* (1998) 61 Cal.App.4th 349, 358 (*Berg*).)  That provision codifies the forum non conveniens doctrine, under which a trial court has discretion to decline to exercise its jurisdiction over a cause of action that it believes may be more appropriately and justly tried elsewhere.  (*Bushansky v. Soon-Shiong* (2018) 23 Cal.App.5th 1000, 1005, fn. 2; see *Stangvik v. Shiley Inc*. (1991) 54 Cal.3d 744, 751.)  Where a section 410.30 motion is "based on a forum selection clause[,] . . . factors that apply generally to a forum non conveniens motion do not control . . . ." (*Berg*, *supra*, at p. 358.)  Instead, "the test is simply whether application of the clause is unfair or unreasonable[; if not,] the clause is usually given effect.  Claims that the previously chosen forum is unfair or inconvenient are generally rejected." (*Ibid*.)

Ordinarily, the party seeking to avoid enforcement of a forum selection clause bears the "burden of establishing that [its] enforcement . . . would be unreasonable." (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496 (*Smith, Valentino*); *Global Packaging, Inc. v. Superior Court* (2011) 196 Cal.App.4th 1623, 1633 ["the party opposing its enforcement bears the 'substantial' burden of proving why it should *not* be enforced"].)  "That burden, however, is reversed when the claims at issue are based on unwaivable rights created by California statutes.  In that situation, the party seeking to enforce the forum selection clause bears the burden to show litigating the claims in the contractually-designated forum 'will not diminish in any way the substantive rights afforded . . . under California law.' " (*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147 (*Verdugo*).)  Drulias's breach of fiduciary duty claims are not based on unwaivable rights created by California statutes.  Accordingly, the burden is his.

### C.    *Standards of Review*

This appeal requires us to resolve the parties' conflicting constructions of Corporations Code section 2116.  We review questions of statutory interpretation de

6

novo.  (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041.)

This appeal also requires us to review the trial court's decision to enforce the forum selection bylaw and stay the action under section 410.30.  In *Lifeco Services Corp. v. Superior Court* (1990) 222 Cal.App.3d 331, 334 (*Lifeco*), this court applied the substantial evidence standard of review to the trial court's finding that enforcement of a forum selection clause would be unreasonable.  *Lifeco* selected the substantial evidence standard without explanation or citation to legal authority.  The Third Appellate District agreed with that standard of review in *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1680-1681 (*Cal-State*), reasoning that courts lack discretion to enforce a forum selection clause where the requirements for invalidating a binding contract are present.  By contrast, our colleagues in the First, Second, and Fourth Appellate Districts review a trial court's decision to enforce or not enforce a forum selection clause for abuse of discretion.  (*America Online, Inc. v. Superior Court* (2001) 90 Cal. App. 4th 1, 7-9 (*America Online*); *Schlessinger v. Holland America* (2004) 120 Cal.App.4th 552, 557; *Verdugo*, *supra*, 237 Cal. App. 4th at p. 148.)  Notably, in *Smith, Valentino*, our Supreme Court concluded "that the trial court acted within its discretion" when it stayed the proceeding based on a contractual forum selection clause, suggesting that the proper standard of review is abuse of discretion and casting doubt on this court's selection of the substantial evidence standard in *Lifeco*.  (*Smith, Valentino*, *supra*, 17 Cal.3d at p. 493.)

At least one court reviewing a decision under section 410.30 combined the standards, reviewing the trial court's order for abuse of judicial discretion, which it defined as an order unsupported by substantial evidence  (*Bechtel Corp. v. Industrial Indem. Co.* (1978) 86 Cal.App.3d 45, 47-48 (*Bechtel*).)  *Bechtel* is not alone in recognizing that the "two standards bear a reciprocal relationship" in some cases.  (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813,

7

831 (*Department of Parks & Recreation*); *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1065-1066 [noting that "it is difficult to distinguish between application of the sufficiency of the evidence standard and the abuse of discretion standard" and that "in some cases the courts have applied both standards"].)

"The practical differences between the [substantial evidence and abuse of discretion] standards of review are not significant. '[E]valuating the factual basis for an exercise of discretion is similar to analyzing the sufficiency of the evidence for the ruling.' " (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1351.) And "[b]oth of these standards of review entail considerable deference to the fact-finding tribunal." (*Department of Parks & Recreation*, *supra*, 233 Cal.App.3d at p. 831.) We need not resolve which standard of review applies because the trial court's order must be sustained under either.

### D.     *The Forum Selection Bylaw Does Not Conflict With California Law or Public Policy*

Drulias argues the forum selection bylaw is not enforceable under California law because it conflicts with section 2116 of the Corporations Code. That provision states: "The directors of a foreign corporation transacting intrastate business are liable to the corporation, its shareholders, creditors, receiver, liquidator or trustee in bankruptcy for the making of unauthorized dividends, purchase of shares or distribution of assets or false certificates, reports or public notices or other violation of official duty according to any applicable laws of the state or place of incorporation or organization, whether committed or done in this state or elsewhere. Such liability may be enforced in the courts of this state." Drulias construes the second sentence of Corporations Code section 2116—"Such liability may be enforced in the courts of this state"—as conferring on California shareholders a *right* to sue the directors of a foreign corporation in California. Drulias argues the director-adopted forum selection bylaw should be held unenforceable because its enforcement would deprive him of his statutory "right" to a California forum. For that

8

argument, he relies on the rule that "a forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state." (*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 200; see (*America Online*, *supra*, 90 Cal.App.4th at p. 15 [refusing to enforce forum selection and related choice of law provisions where their enforcement "would necessitate a waiver of the statutory remedies of the CLRA, in violation of that law's antiwaiver provision (Civ. Code, § 1751) and California public policy"]; (*Verdugo*, *supra*, 237 Cal.App.4th at p. 157 [refusing to enforce forum selection and choice of law clause where party seeking enforcement failed to show that enforcement would not diminish plaintiff's unwaivable statutory rights under the Labor Code]). For the following reasons, Drulias's construction of Corporations Code section 2116 is unpersuasive.

Corporations Code section 2116 codifies the internal affairs doctrine, which we discussed briefly above. (*Vaughn v. LJ Internat., Inc.* (2009) 174 Cal.App.4th 213, 222 (*Vaughn*).) That doctrine " 'is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.' [Citations.] 'States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care.' [Citation.]" (*State Farm Mutual Automobile Ins. Co. v. Superior Court* (2003) 114 Cal.App.4th 434, 442.) "Earlier cases took the strict view that a court would not entertain an action involving the internal affairs of a foreign corporation." (9 Witkin, Summary of Cal. Law (11th ed. 2018) Corporations, § 252, p. 1041.) One such case is *Southern Sierras Power Co. v. Railroad Com.* (1928) 205 Cal. 479, 483, in which our Supreme Court explained that "courts will refuse to exercise visitatorial powers over foreign corporations, or interfere with the management of their strictly internal affairs. [Citations.] Such matters must be settled by the courts of the state

9

creating the corporation." However, under the modern version of the internal affairs doctrine, "a court will exercise jurisdiction [over an action involving the internal affairs of a foreign corporation] unless it is an inappropriate or inconvenient forum for the trial of the action." (9 Witkin, Summary of Cal. Law, *supra*, Corporations, § 252, p. 1041; see 2 Witkin, Cal. Proc. (5th ed. 2008) Jurisdiction § 388, pp. 1031-1032 ["The modern view . . . appears to be that the subject matter (internal affairs) is not in itself a sufficient reason for refusing jurisdiction"].)

As the parties acknowledge, the first sentence of Corporations Code section 2116 codifies the internal affairs doctrine by requiring the application of the law of the state of incorporation in certain actions against directors of a foreign corporation involving the corporation's internal affairs. (As noted, the parties agree that portion of the provision requires the application of Delaware law to Drulias's claims, wherever they are adjudicated.) But the provision's second sentence also codifies an aspect of the internal affairs doctrine—namely, the modern version "of the common law doctrine, whereby a court will entertain an action involving the internal affairs of a foreign corporation." (*Vaughn*, *supra*, 174 Cal.App.4th at p. 223 ["section 2116 codifies the modern view of the common law doctrine . . ."].) That is, the portion of Corporations Code section 2116 on which Drulias relies merely codifies the modern view of the internal affairs doctrine under which courts will not decline to exercise jurisdiction over cases merely because they involve the internal affairs of a foreign corporation. However, nothing in the provision requires a California court to exercise jurisdiction over such a case where it finds "that in the interest of substantial justice [the] action should be heard in" another forum. (§ 410.30, subd. (a).) Put differently, Corporations Code section 2116 does not deprive a court of the discretion to decline to exercise its jurisdiction over an action involving the internal affairs of a foreign corporation where that action would be more appropriately and justly tried elsewhere. (Rest.2d Conf. of Laws § 313 [under the internal affairs doctrine, "[a] court will exercise jurisdiction over an action involving the

10

internal affairs of a foreign corporation *unless it is an inappropriate or an inconvenient forum for the trial of the action*," italics added].)

Drulias's contrary view that Corporations Code section 2116 "was enacted to protect California shareholders from misconduct by directors of foreign corporations . . . by giving them the right to sue such directors in California" finds no support in case law or other binding authority. In short, there is no basis for concluding that Corporations Code section 2116 creates substantive rights. Accordingly, Drulias has not shown that enforcement of the forum selection bylaw will impair his statutory rights or otherwise violate California public policy.

### E. The Trial Court Did Not Err in Concluding That Enforcement of the Forum Selection Bylaw is Reasonable in This Case

Drulias contends the trial court erred in concluding that enforcement of the forum selection bylaw is fair and reasonable in the context of this case for three reasons: (1) the manner in which the bylaw was adopted—unilaterally by the board without notice to shareholders—renders its enforcement unreasonable; (2) the timing of the adoption of the forum selection bylaw—simultaneous with the adoption of the merger agreement— makes its application to his complaint unreasonable; and (3) the 1st Century defendants' decision to seek entry of a final judgment in California makes their later decision to enforce the forum selection bylaw unreasonable. For the reasons below, the trial court did not err in concluding that Drulias failed to carry his burden of establishing that enforcement of the forum selection bylaw is unreasonable.

First, Drulias maintains forum selection clauses are enforceable in California only where they are "freely and voluntarily" negotiated or, at the very least, the plaintiff had the opportunity to walk away from negotiations rather than agree to the provision. He says that, accordingly, we should decline to enforce the forum selection bylaw, given the board adopted it without shareholder approval. In the context of forum selection clauses, enforcement is considered unreasonable where "the forum selected would be unavailable

11

or unable to accomplish substantial justice" or there is no "rational basis" for the selected forum. (*CQL Original Products*, *Inc*. *v*. *National Hockey League Players' Assn*. (1995) 39 Cal.App.4th 1347, 1354 (*CQL*).) Drulias does not assert any of those conventional grounds for denying enforcement. Indeed, when Drulias's "reasonableness" characterization is stripped away, his first argument is simply that the bylaw is invalid under California law. But, of course, the validity inquiry is governed by Delaware law. In any event, Drulias's argument fails, as neither California nor Delaware law requires forum selection clauses be freely negotiated to be enforceable.

A forum selection clause need not be subject to negotiation to be enforceable. (*Net2Phone*, *Inc*. *v*. *Superior Court* (2003) 109 Cal.App.4th 583, 588-589 [applying California law]; *Hornberger Mgmnt. Co. v. Haws & Tingle General Contractors*, *Inc*. (Del. Super. Ct. 2000) 768 A.2d 983, 987, fn. omitted [applying Delaware law and holding that " '[t]he mere absence of negotiation over a forum selection clause does not make the forum selection clause unenforceable.' "]; *Carnival Cruise Lines*, *Inc*. *v*. *Shute* (1991) 499 U.S. 585, 593 (*Carnival Cruise*) superseded by statute on other grounds by 46 U.S.C. § 30509 [applying federal law and rejecting lower court's conclusion "that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining"].) Rather, a forum selection clause contained in a contract of adhesion, and thus not the subject of bargaining, is "enforceable absent a showing that it was outside the reasonable expectations of the weaker or adhering party or that enforcement would be unduly oppressive or unconscionable." (*Furda v. Superior Court* (1984) 161 Cal.App.3d 418, 426; *Carnival Cruise*, *supra*, at p. 595 ["forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness"].)

The forum selection bylaw is entirely consistent with Drulias's reasonable expectations at the time he chose to purchase stock in 1st Century. At that time, Drulias knew or should have known that 1st Century was a Delaware corporation and that,

12

consistent with Delaware law[5], its certificate of incorporation empowered its directors to amend the corporate bylaws unilaterally, subject to subsequent shareholder repeal. (See *Roberts*, *supra*, 358 Or. at p. 428 ["When purchasing stock in a Delaware corporation, shareholders buy into a legal framework that allows corporate directors to unilaterally amend the corporation's bylaws and gives the shareholders the right to repeal those bylaws."]; *North*, *supra*, 47 F.Supp.3d at pp. 642, fn. omitted ["shareholders . . . consented to the Delaware corporate framework by buying shares in a Delaware corporation and agreeing to the certificate of incorporation that allowed the board to unilaterally adopt bylaws"].)  Given that knowledge, Drulias consented to the board's unilateral adoption of corporate bylaws by purchasing stock.  (*Boilermakers*, *supra*, 73 A.3d at p. 956 ["stockholders have assented to a contractual framework established by [Delaware law] and the certificates of incorporation that explicitly recognizes that stockholders will be bound by bylaws adopted unilaterally by their boards.  Under that clear contractual framework, the stockholders assent to not having to assent to board-adopted bylaws"], fns. omitted.)  And Drulias reasonably should have expected that 1st Century would prefer to litigate in Delaware.  (See *Cal-State*, *supra*, 12 Cal.App.4th at p. 1681-1682 [forum selection clause requiring litigation in New York was within plaintiff's reasonable expectations where defendant was domiciled in New Jersey]; *CQL*, *supra*, 39 Cal.App.4th at p. 1355 [forum selection clause requiring litigation in Ontario, Canada held to be "completely consistent with the reasonable expectations of [plaintiff] given that [defendant] is an Ontario, Canada domiciliary . . ."].)  Thus, the reasonable expectation a stockholder like Drulias should have is that 1st Century's board may adopt a forum selection bylaw designating Delaware as the exclusive forum for intra-corporate disputes.  Drulias does not show that enforcement of the bylaw would be unduly

---

[5] Delaware law "allows the corporation, through the certificate of incorporation, to grant the directors the power to adopt and amend the bylaws unilaterally." (*Boilermakers*, *supra*, 73 A.3d at p. 939, fn. omitted.)

13

oppressive or unconscionable.  To the contrary, we agree with the trial court's assessment that there is "no unfairness in a requirement that claims against a Delaware corporation under Delaware law be brought in a Delaware court."  Accordingly, the trial court did not err in concluding that enforcement of the forum selection bylaw was reasonable despite its unilateral adoption by the director defendants.[6]

Second, Drulias contends that a unilaterally adopted forum selection bylaw cannot reasonably be applied "retroactively to litigation arising out of conduct that occurred before shareholders had notice of the bylaw and an opportunity to walk away."  His opening brief offers no legal support for that position beyond his argument that assent to a forum selection provision is required.  Other courts have concluded that there is nothing inherently unreasonable about enforcing a forum selection bylaw adopted after the alleged wrongdoing.  (*North*, *supra*, 47 F.Supp.3d at p. 644 ["forum-selection bylaw does not become unenforceable simply because it was adopted after the purported wrongdoing."]; *City of Providence v*. *First Citizens BancShares Inc*. (Del. Ch. 2014) 99 A.3d 229, 241 (*City of Providence*) [rejecting argument that forum selection bylaw could not be applied to claims that arose before it was adopted]; *In re: CytRx Corp. Stockholder Derivative Litigation* (C.D. Cal. 2015) 2015 U.S. Dist. LEXIS 176966 at *16 (*In re: CytRx Corp.*) ["the timing of a forum-selection clause's adoption does not dictate the clause's validity"].)  We agree.  Valid reasons exist for a corporate board to adopt a forum selection bylaw in conjunction with approving a merger agreement, as occurred here.  "Today, the public announcement of virtually every transaction involving the acquisition of a public corporation provokes a flurry of class action lawsuits alleging that

---

[6] In *Galaviz v*. *Berg* (N.D. Cal. 2011) 763 F. Supp. 2d 1170, a federal district court held a unilaterally adopted forum section bylaw to be unenforceable under federal common law.  That case—decided, as it was, before *Boilermakers* and without reference to "the contractual framework established by [Delaware law] for Delaware corporations and their stockholders"—is unpersuasive.  (*Boilermakers*, *supra*, 73 A.3d at p. 956, fn. omitted.)

14

the target's directors breached their fiduciary duties by agreeing to sell the corporation for an unfair price." (*In re Trulia*, *Inc*. *Stockholder Litigation* (Del. Ch. 2016) 129 A.3d 884, 891.)  Forum selection bylaws have the effect of consolidating such litigation into a single forum, thereby reducing litigation expenses and avoiding duplication of effort (not to mention promoting efficient use of judicial resources), which is beneficial to corporations and their shareholders alike.  (*In re*: *CytRx Corp*., *supra*, 2015 U.S. Dist. LEXIS 176966 at *16; *North*, *supra*, 47 F.Supp.3d at p. 644; *Boilermakers*, *supra*, 73 A.3d at p. 952 ["the forum selection bylaws are designed to bring order to what the boards . . . say they perceive to be a chaotic filing of duplicative and inefficient derivative and corporate suits against the directors and the corporations"].)  Drulias does not argue, let alone demonstrate, that the bylaw at issue was adopted for any reason other than to consolidate merger-related litigation into a single forum, where it could be resolved efficiently and cost-effectively.

For the first time on reply, Drulias analogizes to California cases involving unilaterally adopted arbitration clauses to argue that unilaterally adopted forum selection bylaws should not be applied retroactively to accrued or known claims.  "Points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." (*Campos v*. *Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.)  Because Drulias has not shown good cause for raising this argument belatedly, we will not consider it.[7]

---

[7] Even if we were to consider the new argument, we would reject it.  The line of cases on which Drulias relies holds that while "[a]n arbitration agreement between an employer and an employee may reserve to the employer the unilateral right to modify the agreement," the covenant of good faith and fair dealing implied in every contract bars "an employer [from making] unilateral changes to an arbitration agreement that apply retroactively to 'accrued or known' claims because doing so would unreasonably interfere with the employee's expectations regarding how the agreement applied to those claims." (*Avery v*. *Integrated Healthcare Holdings*, *Inc*. (2013) 218 Cal.App.4th 50, 61.) Drulias effectively asks us to decline to enforce the bylaw because it would, he says, be invalid under California contract law.  But Delaware law governs the validity of the

15

Finally, Drulias argues it would be unreasonable to enforce the forum selection provision because the 1st Century defendants "chose to invoke the benefits and protections of California law and a California court by seeking the entry of a final judgment" here. For that contention, he relies on *Trident Labs*, *Inc*. *v*. *Merrill Lynch Commercial Finance Corp*. (2011) 200 Cal.App.4th 147, 157 (*Trident Labs*), which held that the defendant's extensive litigation in California made enforcement of the forum selection clause, calling for litigation in Illinois, unreasonable as a matter of law.

In *Trident Labs*, the plaintiff filed suit in California on October 31, 2008. (*Trident Labs*, *supra*, 200 Cal.App.4th at p. 151.) The defendant moved to dismiss based on the forum selection clause in June 2010. (*Id*. at p. 152.) In the intervening 19 months, the defendant had removed the case to federal court; after it was remanded, filed an answer and a counterclaim; engaged in "substantial discovery," including filing a motion to compel the plaintiff to produce additional documents and for an award of sanctions against the plaintiff; moved for judgment on the pleadings; and demurred to the plaintiff's first amended complaint. (*Id*. at p. 152.) The court of appeal held "that when a party, under the terms of a forum selection clause, has the option to litigate in more than one forum, that party cannot choose to extensively litigate in the original forum by filing a cross-complaint, conducting substantial discovery, and filing motions seeking relief from the forum court, and then decide to enforce the right it otherwise would have had to compel the other party to litigate in a different forum. Such circumstances make enforcement of the forum selection clause unreasonable as a matter of law." (*Id*. at p. 157.)

Here, nine months passed between the filing of the complaint and the section 410.30 motion. That delay was attributable, not to the 1st Century defendants, but to the parties' attempt to settle, the court's scheduling orders, and Drulias's decision

bylaw. And in *City of Providence* a Delaware court rejected the very retroactivity argument Drulias now asserts.

16

to file an amended complaint. Unlike the defendant in *Trident Labs*, the 1st Century defendants did not file a cross-complaint or seek discovery from plaintiff.[8] Nor did they file multiple motions seeking relief from the court; aside from their motion to dismiss, they filed a single motion seeking relief—namely, approval of the settlement agreement. Given this state's strong public policy in favor of pretrial settlements (*Fisher v. Superior Court* (1980) 103 Cal.App.3d 434, 440), the trial court did not err in concluding that defendants' settlement efforts did not render enforcement of the forum selection bylaw unreasonable.

## III.   DISPOSITION

The order staying the action is affirmed. Respondents shall recover their costs on appeal.

---

[8] The 1st Century defendants did produce certain documents to Drulias in late May 2016, including board meeting minutes, Sandler's fairness opinion and related presentation to the board, and indications of interest received from Midland. Defendants also permitted Eric George, the Chairman of the Special Committee of 1st Century's Board formed to evaluate the Merger Agreement and alternatives thereto, and Peter Buck, a senior banker at Sandler who advised 1st Century on the Merger Agreement, to be deposed in connection with the settlement agreement.

17

_____

ELIA, ACTING P. J.

WE CONCUR:


_____

BAMATTRE-MANOUKIAN, J.



_____

MIHARA, J.




*Drulias v. 1st Century Bancshares, Inc. et al.*
H045049

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.: 1-16-CV-294673 |

| Trial Judges: | Honorable Peter Kirwan |
| | Honorable Brian C. Walsh |

| Counsel for Plaintiff and Appellant: | Kirk Bartlett Hulett |
| DEAN DRULIAS | Hulett Harper Stewart |

John F. Keating Jr.
The Brualdi Law Firm

| Counsel for Defendants and Respondents: | Adam Seth Paris |
| 1ST CENTURY BANCSHARES, INC et al., | Jackson S. Trugman |
| | Zac A. Tafoya |
| | Laura Kabler Oswell |
| | Sullivan & Cromwell |

Anna-Rose Mathieson
California Appellate Law Group

William Savitt
Anitha Reddy
Wachtell, Lipton, Rosen & Katz

*Drulias v. 1st Century Bancshares, Inc. et al.*
H045049