Filed 6/27/22  Estate of Graham CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| Estate of SHAWNA GRAHAM, Deceased. | C093868 |
| DAVID DOWNS, as Administrator, etc., <br><br> Petitioner and Appellant, <br><br> v. <br><br> WELLS FARGO BANK, N.A. et al., <br><br> Objectors and Respondents. | (Super. Ct. No. SPR0009820) |

Appellant David Downs is serving as the administrator of the estate of Shawna Graham.  The estate's primary asset is a piece of real property that Downs wants to sell for $365,000.  The property is over-encumbered.  Respondent Wells Fargo Bank, N.A. (Wells Fargo), is the beneficiary of a deed of trust on the property and is owed approximately $338,000; Matadors Community Credit Union (Matadors) has a security interest in a solar energy system installed on the property and is owed approximately $29,000; and decedent owed the Internal Revenue Service (IRS) approximately $40,000

1

in unpaid federal taxes. The costs of selling the property will be approximately $39,000, and Downs contends he and his attorney are entitled to approximately $66,500 in administrative expenses. If the property is sold for $365,000, there will not be enough money to pay all these debts.

Downs thus filed a petition asking the trial court to specify the order in which the proceeds from the sale of the property should be distributed. In particular, he asked the court to order that the proceeds be distributed first to pay federal taxes, then to pay administrative expenses, then to pay costs of sale. That would leave approximately $220,000, which would be paid to Wells Fargo, and Matadors would receive nothing. Once all sale proceeds were distributed, Wells Fargo's and Matadors's debts would be treated as having been paid in full, and the property would be transferred to the buyer free and clear of all liens. The trial court denied the petition in its entirety. We affirm in part and reverse in part and remand this case to the trial court with instructions to (1) determine the amount of statutory fees that are reasonably related to the administration of the property and thus entitled to be paid first out of the sale proceeds, and (2) order that costs of sale shall be paid second in order of priority.

## FACTUAL AND PROCEDURAL BACKGROUND

Decedent died testate on May 20, 2019, in Placer County, and Downs is serving as the administrator of her estate. Decedent owned a house in Lincoln, located at 682 Courtyards Loop (hereafter "the property"). The property was appraised at $372,000 at the date of death. According to Downs, the estate has additional assets valued at approximately $69,172.[1]

The estate has two secured creditors. The first is Wells Fargo. Decedent purchased the property by taking out a mortgage secured by a deed of trust encumbering

---

[1] All numbers are rounded to the nearest dollar.

2

the property, and Wells Fargo is the current beneficiary of the deed of trust. The loan is in default, and a notice of default was recorded on December 18, 2019. As of June 2020, the total amount due on the loan was approximately $338,000. Decedent also owes Matadors approximately $29,000, secured by solar panels and related equipment affixed to the property. There is also a $40,059 federal tax claim against the estate. Federal tax claims give rise to "a lien in favor of the United States upon all property and rights to property, whether real or personal," belonging to the taxpayer. (26 U.S.C. § 6321.) The property is thus encumbered with liens totaling approximately $407,000.

Downs listed the property for sale and received an offer for $365,000, which is not enough to pay off the liens. Downs estimates costs of sale (e.g., realtor fees, title fees, prorated property taxes, etc.) will total $39,408. He also estimates costs of administration will total $66,537. This includes a total of $20,600 in statutory fees ($10,300 each to Downs and his attorney), calculated based on the property's $365,000 sales price. Costs of administration also include $40,000 in anticipated extraordinary attorney fees, and $6,860 in paralegal fees, attributable to the sale of the property. Anticipated extraordinary fees thus total $46,860.

The secured claims, taxes, costs and fees listed above total over $500,000, which is more than the value of all the estate's assets. It thus appears the estate is insolvent. Moreover, assuming a $365,000 sales price, the property is over-encumbered and has no equity and thus no net value to the estate.

Given the estate's apparent insolvency, on July 6, 2020, Downs filed what he captioned a petition "for order determining the amount of expenses of administration and application of proceeds from sale in regards to priority of debts and order for reconveyance of real property" in the trial court.[2] Citing Probate Code sections 11420

---

[2] The petition that is in the clerk's transcript is actually captioned "first amended petition." We have not been provided with a copy of the original petition.

and 10361, Downs argued the proceeds from the sale of the property must be distributed in the following order of priority: (1) the federal tax claim; (2) costs of administration; (3) costs of sale; (4) Wells Fargo; (5) Matadors. Downs also argued the property should be conveyed to the buyer free of all liens. Downs stated that, absent a court order, the title company would give automatic priority to the lien holders and would distribute the entirety of the sale proceeds to them, which would leave nothing for higher priority debts, including costs of administration. He thus asked the court to order that the proceeds be distributed as follows and in the following order:

- $40,059 in federal taxes be placed in a trust account.
- $66,537 in costs of administration be placed in a trust account.
- $39,408 in costs of sale be paid directly to the parties to whom they are owed.
- $224,131 to Wells Fargo to partially pay off the mortgage.
- $0 to Matadors.

The money placed in a trust account would be distributed at a later date subject to court order, and any objections to the amount of fees could be addressed at that time. Downs also asked the trial court to order that the underlying obligations of Wells Fargo and Matadors would be treated as having been paid and their liens released once all sale proceeds are distributed. In other words, Wells Fargo and Matadors would not be paid in full and would lose their security interests in the property.

Wells Fargo and Matadors filed objections to the petition, and the trial court asked the parties to file briefs addressing its authority to compel the release of the liens held by Wells Fargo and Matadors. Downs argued the liens are released by operation of law once all the sale proceeds are distributed. Wells Fargo argued it has a statutory and contractual right to foreclose on the property that is not extinguished by the Probate Code, and that the court did not have authority to force secured creditors to release their liens without receiving payment in full. Matadors made similar arguments.

4

The trial court issued a ruling on January 21, 2021, denying the petition in its entirety. It framed the issues as follows: "[A]dministrator requests the court determine expenses of administration (including anticipated extraordinary attorney fees) to be withheld from the proceeds of sale of the property, and disposition of the remaining sale assets. Administrator additionally seeks an order compelling two secured lenders, who have perfected security interests in the property, to re-convey or surrender their security interests as part of the property sale." As to the federal tax claim, the trial court noted Downs cited no authority for the proposition that the property should bear the entirety of the IRS debt, ahead of the other secured creditors. As to expenses of administration, it held the anticipated extraordinary fees were not reasonably related to the administration of the property. It did not expressly address statutory fees. As to costs of sale, it noted, "There is no substantial argument that, if sold, the estate sale would be subject to costs of sale in approximately the amounts requested by the administrator. However, . . . had the estate elected [to] surrender the property to foreclosure, the estate need not have been involved in that process and costs, if any, would have been addressed by the foreclosing lienholder, purchaser and others." Finally, it found Probate Code section 10362 does not extinguish a secured creditor's lien when encumbered property is sold unless the lien is paid in full.

Downs timely appealed. He argues the trial court could not simply deny the petition outright without providing him with guidance or instructions on the order in which the estate's debts are to be paid from the sale proceeds, and without determining the amount of administrative expenses that are reasonably related to the administration of the property, as required by Probate Code section 10361.5. He does not repeat his argument that the obligations of Wells Fargo and Matadors should be deemed to have been paid in full once all sale proceeds are distributed, and we thus presume he has

5

abandoned that argument on appeal. Wells Fargo filed an answering brief; Matadors did not.[3]

## DISCUSSION

## I

### *Relevant Law*

#### A. *Probate Code Section 11420*

Probate Code section 11420, subdivision (a), specifies the order in which the estate's debts shall be paid. (Further undesignated statutory references are to the Probate Code.) *First*, debts owed to the United States, but only to the extent they have preference under the laws of the United States. (§ 11420, subd. (a).) *Second*, expenses of administration, subject to the following caveat: "With respect to obligations secured by mortgage, deed of trust, or other lien, . . . only those expenses of administration incurred that are reasonably related to the administration of that property by which obligations are secured shall be given priority over these obligations." (§ 11420, subd. (a)(1).) *Third*, obligations secured by a mortgage, deed of trust, or other lien. These debts shall be paid in the order of their priority, and if the proceeds are insufficient, the part of the obligation remaining unsatisfied shall be classed with general debts. (§ 11420, subd. (a)(2).) *Next* comes funeral and last illness expenses, family allowances, and wage claims. (§ 11420, subd. (a)(3)-(6).) *Finally*, general debts, including any debts not included in a prior class. (§ 11420, subd. (a)(7).) Section 11420 thus provides that debts owed to the United States are entitled to whatever preference they have under federal law. It also provides that although expenses of administration generally have priority over the estate's other debts, they only have priority over debts secured by property to the extent they are reasonably related to the administration of that property.

---

[3] This case was fully briefed and assigned to this panel on February 28, 2022.

6

*B. Probate Code Section 10361*

Section 10361 deals specifically with how proceeds shall be distributed when encumbered property of the estate is sold. In such case, "the purchase money shall be applied in the following order: [¶] (1) Expenses of administration which are reasonably related to the administration of the property sold as provided in paragraph (1) of subdivision (a) of Section 11420. [¶] (2) The payment of the expenses of the sale. [¶] (3) The payment and satisfaction of the amount secured by the lien on the property sold if payment and satisfaction of the lien is required under the terms of the sale. [¶] (4) Application in the course of administration." (§ 10361, subd. (a).) Section 10361 thus incorporates section 11420's provision that expenses of administration only have priority over debts secured by property to the extent they are reasonably related to the administration of that property.

*C. Probate Code Section 10361.5*

Section 10361.5 provides that an estate's representative may "petition for an order determining the amount of expenses of administration that are reasonably related to the administration of that encumbered property as provided in paragraph (1) of subdivision (a) of Section 11420."

Expenses of administration includes fees paid to compensate the administrator and the administrator's attorney for their services. (See *Estate of Wong* (2012) 207 Cal.App.4th 366, 375.) Both the administrator and his or her attorney "*shall* receive compensation [for ordinary services] based on the value of the estate," calculated by the following formula: 4 percent for the first $100,000; 3 percent for the next $100,000; and 2 percent for the next $800,000. (§§ 10800, 10810, italics added.) We will refer to these fees as statutory fees. Statutory fees are "intended as payment for the services which are involved in substantially every probate case." (*Estate of Hilton* (1996) 44 Cal.App.4th 890, 894.) Statutory fees are mandatory and the court has no discretion not to award them. (See *Estate of Getty* (1983) 143 Cal.App.3d 455, 461.)

7

In addition to statutory fees, the court "*may* allow additional compensation for extraordinary services" by the administrator or his or her attorney "in an amount the court determines is just and reasonable." (§§ 10801, subd. (a), 10811, subd. (a), italics added.) We will refer to these fees as extraordinary fees. Unlike statutory fees, there is no right to extraordinary fees, and whether to award them and in what amount is committed to the sound discretion of the probate court. (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448.)

## II

### *Standard of Review*

The parties disagree on the appropriate standard of review, largely because they frame the issues on appeal differently. Both are partially correct.

Downs argues this appeal involves the proper interpretation of sections 11420, 10361, and 10361.5 as applied to undisputed facts and that our review is thus de novo. He cites the following rules: "A trial court's interpretation of a statute is reviewed de novo. [Citations.] Similarly, the application of a statutory standard to undisputed facts is reviewed de novo. [Citations.] [¶] The de novo standard of review also applies to mixed questions of law and fact when legal issues predominate." (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212.) We agree that to the extent this appeal presents questions of statutory interpretation, including the interpretation of sections 11420, 10361, and 10361.5, our review is de novo.

Wells Fargo argues this appeal involves the trial court's denial of Downs's request for $40,000 in extraordinary fees, which we review for an abuse of discretion. "The law with respect to the allowance of fees claimed for extraordinary services rendered in probate proceedings is well settled. The grant or denial of such fees is addressed to the sound discretion of the probate court." (*Estate of Gilkison, supra*, 65 Cal.App.4th at p. 1448.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the

8

facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.) Downs argues he has not yet filed a request for extraordinary fees, and that even the trial court acknowledged this when it noted both that "an extraordinary fees petition is not yet before the court" and that the petition's prayer for relief did not include a request for extraordinary fees. Downs thus argues he is *not* appealing from an order denying a request for extraordinary fees, and that the appeal is thus not subject to the abuse of discretion standard. Although this is technically true, the trial court noted that it nonetheless had to consider the reasonableness of the anticipated extraordinary fees in order to determine whether they are reasonably related to the administration of the property within the meaning of sections 11420 and 10361 and should thus be paid ahead of Wells Fargo and the other lienholders. It found they were not. We find that this portion of the court's ruling is reviewed under the deferential abuse of discretion standard.[4]

### III

### *Analysis*

#### A. *The Federal Tax Claim*

Downs asked the trial court to order that the first $40,059 from the sale proceeds be distributed (or, more precisely, be held in trust) to pay the federal tax claim. The trial court noted, "No authority is provided for the proposition that the real property should bear the entirety of the present IRS debt. It is unknown as to why the IRS debt remains unpaid from other estate assets." It also noted, "Were the court to adopt administrator's

---

[4] We note our decision would be the same even if the less deferential substantial evidence standard applied to this portion of the trial court's decision. (See, e.g., *Drulias v. 1st Century Bancshares, Inc.* (2018) 30 Cal.App.5th 696, 704 [noting " 'practical differences' " between substantial evidence and abuse of discretion standards of review " 'are not significant,' " and both " 'entail considerable deference to the fact-finding tribunal' "].)

arguments, the withheld funds [payable to the IRS] would apparently be forever lost to the secured creditors, even if the administrator later paid all or part of the IRS debt using other estate property, because the court would have compelled the secured creditors to extinguish their security and any further claims." Because the trial court denied the petition, it must have implicitly found the IRS was *not* entitled to be paid ahead of Wells Fargo and Matadors from the sale proceeds. (See, e.g., *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134 [lower court order is presumed to be correct on appeal and appellate court will imply findings to support the order].)

As noted above, section 11420, which establishes the general order of priority of the estate's debts, provides debts owed to the United States "that have preference under the laws of the United States . . . shall be given the preference required by such laws." (§ 11420, subd. (a).) The federal tax claim is thus entitled to priority only to the extent required by federal law. Citing 31 United States Code section 3713, Downs argues a federal tax claim "takes priority over all [estate] expenses and debts," and "shall be paid first when the estate of a deceased debtor is not enough to pay all debts of the debtor." That is the extent of Downs's argument on the issue. Wells Fargo barely mentions the federal tax claim, never states where it falls in order of priority, and cites no law on the issue.

Section 3713 of title 31 of the United States Code provides, "A claim of the United States Government shall be paid first when [¶] . . . [¶] (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor." (31 U.S.C. § 3713(a)(1).) Although the plain language of section 3713 supports Downs's argument, it nonetheless appears that a federal tax lien does *not* take priority over a purchase money security interest like a mortgage. According to the IRS's Internal Revenue Manual, "(1) A purchase money mortgage or security interest is defined under state law as a mortgage or security device taken to secure the performance of an obligation incurred in the purchase of real or personal property. [¶] (2) While the

10

Internal Revenue Code does not give a PMSI [purchase money security interest] priority status, pursuant to Rev. Rul. 68-57, 1968-1 C.B. 553, the [IRS] recognizes that a PMSI will have priority over the [IRS]'s NFTL [notice of federal tax lien] if the PMSI is valid under local law." (Internal Revenue Service, Internal Revenue Manual 5.17.2.6.5.11, <https://www.irs.gov/irm/part5/irm_05-017-002> [as of June 21, 2022], archived at <https://perma.cc/89BC-W75R>; see also *Slodov v. United States* (1978) 436 U.S. 238, 257 ["the Code and established decisional principles subordinate the tax lien to . . . collateral which is the subject of a purchase-money mortgage regardless of whether the agreement was entered into before or after the filing of the tax lien" (fns. omitted)]; Rev. Rul. 68-57, 1968-1 C.B. 553 [purchase-money mortgage valid under local law takes priority over federal tax lien].) It thus appears that the federal tax lien is subordinate to Wells Fargo's security interest so long as that security interest is valid under California law,[5] which means Wells Fargo would be paid from the sale proceeds *ahead of* the IRS.

In any event, with almost no argument on this issue,[6] Downs fails to convince us that the trial court erred in denying his request to order that the first $40,059 from the sale proceeds be distributed to the IRS, ahead of any distribution to Wells Fargo. (See *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 ["Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error"].)

What about the IRS's priority over administrative expenses? Although Wells Fargo's mortgage may have priority over the IRS's tax lien, administrative expenses do not, a fact which Downs recognizes. Downs, however, cites the Internal Revenue Manual for the proposition that the IRS has discretion to allow expenses of

---

[5] There is no suggestion that it isn't.

[6] We also note that the IRS has not filed anything in this case, even though it was served with a notice of the appeal.

11

administration of an estate to be paid ahead of a federal tax lien. (See Internal Revenue Service, Internal Revenue Manual 5.5.2.4(3), <https://www.irs.gov/irm/part5/irm_05-005-002> [as of June 21, 2022], archived at < https://perma.cc/98GS-KA93> ["the [IRS] may *in its discretion* not assert priority of its federal tax lien over reasonable administrative expenses of the estate"]; *id.*, 5.17.13.4(2), <https://www.irs.gov/irm/part5/irm_05-017-013> [as of June 21, 2022], archived at <https://perma.cc/3ZP6-X98K> ["The [IRS] may, in *limited circumstances*, cede priority for purposes of funding claims for family allowances, funeral expenses, or administrative expenses, even though debts to the Government technically have priority over these claims"].) We will leave it to Downs to negotiate with the IRS over this issue.

### B. Expenses of Administration

The bulk of the parties' briefs deal with statutory and extraordinary fees, which are classified as expenses of administration. The estate's debt to Wells Fargo is secured by a mortgage and deed of trust on the property, and it appears Matadors and the IRS also have a lien on the property to secure the payment of their respective debts. Sections 11420 and 10361 provide expenses of administration are *only* entitled to priority over this type of debt if they are reasonably related to the administration of the property that secured the debt. In other words, Wells Fargo and the other lienholders get paid out of the sale proceeds *before* Downs and his attorney get paid, *except for* those statutory or extraordinary fees that are reasonably related to the administration of the property. Statutory and extraordinary fees that are not reasonably related to the administration of the property are paid *after* Wells Fargo and the other lienholders.

In order to determine what expenses of administration are entitled to priority over Wells Fargo and the other lienholders, section 10361.5 provides the administrator "may . . . petition for an order determining the amount of expenses of administration that are reasonably related to the administration of that encumbered property." Here, Downs filed such a petition. Downs in essence asked the trial court to find that the amount of

12

statutory and extraordinary fees reasonably related to the administration of the property was $66,537, and that this amount should thus be withheld from the sale proceeds and placed in a trust account to be distributed at a later date pursuant to a court order, and should not be distributed to Wells Fargo or Matadors.

As noted, the trial court denied the petition. Downs argues the trial court could not simply deny the petition, and instead had to actually determine the amount of fees that were reasonably related to the administration of the property. We analyze statutory fees and extraordinary fees separately.

i.      *Statutory Fees*

Downs applied the formula for calculating statutory fees to the property's sales price (i.e., $365,000) and calculated a statutory fee of $10,300 to be paid to both Downs and his counsel, for a total of $20,600.[7] Wells Fargo agrees that Downs and his counsel are entitled to $20,600 in statutory fees based on the value of the property. The dispute is over whether such fees should be paid out of the sales proceeds or should be paid out of the estate's other assets.

Downs contends that the portion of statutory fees that are calculated based on the value or sales price of the property must, almost by definition, constitute expenses of administration that are reasonably related to the administration of that property within the meaning of section 10361, and that this amount is thus entitled to be paid first from the sales proceeds. We find this to be a colorable argument, but Wells Fargo never addresses it. Instead, Wells Fargo states that the $20,600 "can be paid from the Estate's other assets," and thus presumably contends that these fees should not be deemed to be reasonably related to the administration of the property and thus should not be paid from the sale proceeds ahead of Wells Fargo and the other lienholders.

---

[7] This amount does not include statutory fees based on the remaining $69,172 in estate assets.

13

The trial court did not directly address whether statutory fees of $20,600 were reasonably related to the administration of the property. It did note, however, that Downs "has already conceded there are approximately $69,171.80 in other assets in the estate." That is all the trial court said on this issue. It did not expressly address the issue of whether these fees, or any portion thereof, are reasonably related to administration of the property. Moreover, it is unclear whether the trial court believed it did not need to rule on this issue if the estate had other assets from which to pay these fees.

Section 10361 provides that when encumbered property is sold, expenses of administration that are reasonably related to the administration of the property are to be paid first out of the sale proceeds. Section 10361 makes no exception to this order of priority if the estate has other assets from which to pay these expenses. Thus, if $20,600 in statutory fees is reasonably related to the administration of the property, then that amount must be paid first out of the sales proceeds, and the availability of other assets is irrelevant. Moreover, section 10361.5 provides the administrator may petition "for an order determining *the amount* of expenses of administration that are reasonably related to the administration of" encumbered property that is sold. We thus find it necessary to remand this portion of the trial court's order (or lack thereof) to the trial court to determine that amount. In particular, the trial court should determine what portion, if any, of the $20,600 in statutory fees is reasonably related to administration of the property.

### ii.    *Extraordinary Fees*

Downs anticipates seeking extraordinary fees of approximately $46,860. He complains the trial court failed to determine the amount of extraordinary fees that are reasonably related to the administration of the property and thus entitled to priority. To the contrary, the trial court determined that, given the facts in this case, no extraordinary fees are reasonably related to the administration of the property.

14

The trial court noted that although a petition for extraordinary fees had not yet been filed, it nonetheless had to consider the reasonableness of the anticipated extraordinary fees in order to determine whether they are reasonably related to the administration of the property. It found they were not. It did not abuse its discretion in so finding.

In deciding whether to allow extraordinary fees, the court may consider the results achieved and whether those results benefited the estate as a whole or only benefited one distributee. (*Estate of Stevenson* (2006) 141 Cal.App.4th 1074, 1091.) "Allowances for extraordinary compensation obviously further deplete the distributive shares of the estate. Thus, they will not be approved unless the court is convinced that the estate *benefited* from the services." (Ross and Cohen, Cal. Practice Guide: Probate (The Rutter Group 2021) ¶ 16.333; see also Cal. Rules of Court, rule 7.702 [request for extraordinary fees must be accompanied by statement showing the results achieved and benefit of services to estate].)

Here, the trial court found it was not reasonable to incur additional fees to sell the property because the property was over-encumbered and the estate was insolvent. As a result, any additional fees incurred would harm the estate by reducing the amount available to pay creditors. If Downs had simply let Wells Fargo foreclose on the property, *all* additional fees could have been avoided and the estate would be close to solvency. (See *Cosentino v. Coastal Construction Co.* (1994) 30 Cal.App.4th 1712, 1716 [holder of mortgage retains right to foreclose on mortgaged property in decedent's estate].) Downs's decision to incur additional fees trying to sell the property thus only added to the debts of an estate that was already insolvent and benefited only one distributee—Downs's attorney. We find the trial court did not abuse its discretion in concluding Downs's decision was not reasonable, and the fees incurred as a result of his decision were not reasonably related to the administration of the property.

15

Downs argues all the extraordinary fees sought are directly related to the sale of the property. This may be true, but it is not dispositive, because such fees must be *reasonably* related to the sale. The trial court found it was unreasonable for Downs to incur any fees to sell the property, because the property was already over-encumbered and incurring additional fees to sell it would only add to the debts of an already insolvent estate. Again, we find no abuse of discretion.

Downs argues he has a duty to administer the estate's assets even if the estate is insolvent or its primary asset is over-encumbered. This may also be true, but it does not establish the trial court abused its discretion in determining it was unreasonable to incur fees to sell the property rather than letting it be sold via foreclosure. Downs contends he "may not simply allow foreclosure," but he does not explain why not, and the law appears to be otherwise. "Absent special circumstances, whether a mortgage should be paid off is left to the discretion of the representative of the estate. [Citation.] When faced with a foreclosure or a trustee's sale, the administrator must decide 'whether to pay the debt or permit the property to be taken.' [Citation.] The value of the equity in the property is, of course, an important factor to be considered in his determination." (*Saltares v. Kristovich* (1970) 6 Cal.App.3d 504, 518-519.) Here, because the estate had no equity in the property, it was unreasonable to incur additional fees to sell the property rather than simply let Wells Fargo foreclose.

### C. Costs of Sale

Downs asked the court to order that the estimated costs of sale be paid directly from the sale proceeds and ahead of Wells Fargo and the other lienholders. The trial court ruled as follows: "There is no substantial argument that, if sold, the estate . . . would be subject to costs of sale in approximately the amounts requested by administrator. However, the court notes that . . . had the estate elected [to] surrender the property to foreclosure, the estate need not have been involved in that process and costs,

if any, would have been addressed by the foreclosing lienholder, purchaser and others." That is all the trial court said about costs of sale.

Downs argues the trial court should have specified the order in which costs of sale should be paid from the sale proceeds rather than essentially telling Downs he should not have tried to sell the encumbered property. Wells Fargo does not address costs of sale in its brief, although it does acknowledge they are second in order of priority.

Regardless of who sells the property, section 10361 specifies the order in which the purchase money shall be applied. Costs of sale are second in order of priority and are paid before lien holders, including Wells Fargo. The trial court's order should have so specified.

## DISPOSITION

The ruling on the amended petition is affirmed in part and reversed in part, consistent with the above opinion. The matter is remanded to the trial court with instructions (1) to determine the amount of statutory fees that is reasonably related to the administration of the property, and thus entitled to be paid first out of the proceeds from the sale of the property, and (2) to order that costs of sale shall be paid second in order of priority from the sale proceeds. Both sides shall bear their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

/s/
EARL, J.

We concur:

/s/
MAURO, Acting P. J.

/s/
DUARTE, J.

17