Filed 5/5/23 Pham v. Arlo Technologies CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN PHAM,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>ARLO TECHNOLOGIES, INC., et al.,<br><br>　　Defendants and Respondents. | H049577<br>(Santa Clara County<br>Super. Ct. Case No. 19CV340741,<br>Consolidated With Lead Case No.<br>18CV339231) |
| CHIRAG PATEL,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>ARLO TECHNOLOGIES, INC., et al.,<br><br>　　Defendants and Respondents. | H049577<br>(Santa Clara County<br>Super. Ct. Case No. 19CV340758,<br>Consolidated With Lead Case No.<br>18CV339231) |
| ATHANASIOS PERROS,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>ARLO TECHNOLOGIES, INC., et al.,<br><br>　　Defendants and Respondents. | H049577<br>(Santa Clara County<br>Super. Ct. Case No. 19CV342071,<br>Consolidated With Lead Case No.<br>18CV339231) |

The Securities Act of 1933 (the 1933 Act) (15 U.S.C. § 77a et seq.)[1] permits plaintiffs to file actions thereunder in state court and prohibits defendants from removing such actions to federal court. (§ 77v(a); *Cyan, Inc. v. Beaver County Employees Retirement Fund* (2018) 138 S.Ct. 1061, 1066, 1068-1069, 1075 (*Cyan*).) Defendant Arlo Technologies, Inc. is a Delaware corporation with a federal forum provision (FFP) in its corporate charter. The FFP requires shareholders to bring federal claims under the 1933 Act in federal court unless Arlo consents to a different forum. In this action, plaintiffs John Pham, Chirag Patel, and Athanasios Perros challenged the provision by pursuing 1933 Act claims in state court and opposing Arlo's forum non conveniens motion. We agree with the First District's determination in *Wong v. Restoration Robotics, Inc.* (2022) 78 Cal.App.5th 48 (*Restoration Robotics*) that FFP's are valid under Delaware law and the United States Constitution and may be enforceable under California law. Moreover, we affirm the trial court's determination that it was appropriate to enforce the FFP on the particular facts of this case, even though the federal forum was no longer available when the trial court decided Arlo's motion.

## I.     BACKGROUND

### A.     *Arlo's Initial Public Offering and FFP*

Arlo is a Delaware corporation with its principal place of business in California. It sells network-connected home security cameras, monitoring systems, and monitoring services. Prior to its initial public offering (IPO), Arlo was a subsidiary of NETGEAR. Through its IPO, which occurred in August 2018, Arlo became an independent company.

Prior to the IPO, Arlo adopted Article XIV.B to its Amended and Restated Certificate of Incorporation, which provides: "Unless the Corporation consents in writing to the selection of an alternative forum, the federal district courts of the United States shall be the exclusive forum for the resolution of any complaint asserting a cause of

---

[1] Undesignated statutory references are to Title 15 of the United States Code.

action arising under the Securities Act of 1933, as amended. Any person or entity purchasing or otherwise acquiring any interest in any security of the Corporation shall be deemed to have notice of and consented to the provisions of this Certificate." Arlo publicly disclosed its Amended and Restated Certificate of Incorporation as Exhibit 3.1 to a registration statement it filed with the Securities and Exchange Commission about one month before the IPO.

**B.** *Procedural History*

In early 2019, plaintiffs filed separate class action complaints in Santa Clara County Superior Court, alleging that Arlo violated the 1933 Act in connection with the IPO.[2] The trial court consolidated plaintiffs' actions with several other then-pending putative class actions. In May 2019, plaintiffs joined in the filing of a consolidated complaint asserting 1933 Act claims.

In June 2019, on defense motion, the trial court stayed the case in deference to a federal putative class action asserting federal statutory claims arising out of Arlo's IPO and common stock purchases in the following months, including 1933 Act claims. The trial court stated that "if anything remains to be adjudicated in this case" after the federal action was completed, then "the stay should be lifted so this Court can address the remaining claims."

The federal litigation yielded a class action settlement. Plaintiffs preserved their claims by opting out of the settlement.

---

[2] In addition to Arlo, defendants are NETGEAR, Inc.; several individuals who served as Arlo's officers and/or directors (Matthew McRae; Christine M. Gorjanc; Patrick C.S. Lo; Andrew W. Kim; Ralph E. Faison; Jocelyn E. Carter-Miller; and Grady K. Summers); and investment banks that served as underwriters for Arlo's initial public offering (Merrill Lynch, Pierce, Fenner & Smith Incorporated; Deutsch Bank Securities Inc.; Guggenheim Securities LLC; Raymond James & Associates, Inc.; Cowen and Company, LLC; and Imperial Capital, LLC).

On May 5, 2021, the trial court issued a case management order authorizing plaintiffs to file an amended pleading on June 4, 2021, and requiring a responsive pleading, such as a demurrer or motion to dismiss, to be filed by July 6, 2021. The court directed the parties to meet and confer on a briefing schedule and hearing date for the anticipated motion.

In mid-June 2021, after plaintiffs timely filed the operative Consolidated Second Amended Complaint for Violations of the Securities Act of 1933,[3] defense counsel initiated the meet and confer process regarding the hearing date and briefing schedule for their forthcoming motion to dismiss pursuant to the FFP, which they intended to file within the week. Defense counsel then proposed three hearing dates in July 2021. In the ensuing exchange, defense counsel argued in favor of a July hearing, asserting that "the statute of repose expires in early August, so it is certainly in your clients' interest to have this issue decided before then." Plaintiffs' counsel nonetheless maintained that the motions should be heard in September 2021. Defense counsel agreed to have their motions heard in September but "advised that if, in opposing our FFP motion, you take the position that no alternative federal forum is available, then we will alert the Court to the fact that you declined to tee up this motion earlier."

The trial court heard defendants' motion to dismiss the action pursuant to the FFP in September 2021, more than three years after Arlo's IPO. The parties agreed that, at the time of the hearing, plaintiffs were barred by at least a statute of repose from refiling their claims in federal court if the trial court dismissed them. (See 15 U.S.C. § 77m.) The trial court granted the motion and entered judgment of dismissal. Plaintiffs timely appealed.

---

[3] The other individuals who had been included as plaintiffs in the consolidated action did not opt out of the federal settlement, were no longer identified as plaintiffs in the operative complaint, and ceased their participation in the trial court proceedings.

## II.    DISCUSSION

### A.    *Standard of Review*

We review de novo the legal question whether an FFP comports with statutory or constitutional law. (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 61.)  Where the material facts are undisputed, we likewise review de novo "[w]hether the FFP constitutes a valid contract" and "whether the FFP is unconscionable and therefore unenforceable." (*Ibid.*)  "If the FFP is valid, applicable, and not unconscionable, the question remains whether the FFP is reasonable.  [Citation.]  Some California Courts of Appeal apply the abuse of discretion standard in reviewing a trial court's decision to enforce a forum selection provision and others apply a substantial evidence standard.  [Citation.]  ' "The practical differences between the [substantial evidence and abuse of discretion] standards of review are not significant," ' and both standards ' "entail considerable deference to the fact-finding tribunal." ' [Citation.]" (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 62, fn. omitted; see also *Drulias v. 1st Century Bancshares, Inc.* (2018) 30 Cal.App.5th 696, 704 (*Drulias*).)

### B.    *Whether the 1933 Act Permits Corporations to Adopt FFP's*

Plaintiffs contend that "[t]he 1933 Act grants plaintiffs the unwaivable right to choose between federal and state courts for resolving their disputes."  But that is not what the statute says.  Moreover, plaintiffs' construction of the statute is foreclosed by United States Supreme Court precedent.  Accordingly, we reject plaintiffs' contention.

Plaintiffs' argument rests on two sections of the 1933 Act.  First, section 77v(a) vests state and federal courts with concurrent jurisdiction over 1933 Act claims and establishes a general rule forbidding removal of 1933 Act cases from state to federal court.  (15 U.S.C. § 77v(a); *Cyan*, *supra*, 138 S.Ct. at pp. 1066, 1068-1069, 1075.)  Plaintiffs argue that the antiremoval provision independently bars Arlo's FFP because the FFP's effect is tantamount to removal.  Second, section 77n provides: "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance

5

with any provision of this [subchapter] or of the rules and regulations of the Commission shall be void." (15 U.S.C. § 77n.) Plaintiffs argue that even if section 77v(a) does not independently bar Arlo's FFP, the "antiwaiver provision" precludes Arlo from imposing an FFP on plaintiffs, because the FFP calls for plaintiffs to waive their statutory right to pursue a 1933 Act claim in state court.

Our colleagues in the First District rejected both lines of argument in *Restoration Robotics*. (*Restoration Robotics*, *supra*, 78 Cal.App.5th at pp. 62-66.) We agree with their analysis.

First, "[b]y its terms, section 77v(a) does nothing more or less than prevent a defendant from removing a civil case that has been filed in state court to the United States district court corresponding to the location where the case was filed. [Citation.]" (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 62.) Arlo does not, strictly speaking, seek to remove this case to federal court.

Plaintiffs contend that enforcement of an FFP is the same as removal because it has the same general[4] effect: it forces a plaintiff who has filed suit in state court to litigate in federal court instead. Plaintiffs assert that the FFP subverts the purpose of the antiremoval provision because it deprives plaintiffs of their "choice between jurisdictions," granting the "*defendant* control over the choice of forum." But a state court motion to enforce a contractual promise to bring suit in federal court by dismissing a claim differs materially from a defendant's removal to federal court of a case properly filed in state court, in that the defendant must demonstrate an enforceable contractual promise to litigate disputes in federal court—i.e., that plaintiffs had in fact exercised, by contract, their "choice between jurisdictions." Section 77v(a) simply does not address the

---

[4] As taken up in more detail below, the parties agree that in this case plaintiffs cannot refile their claims in federal court because the statutes of limitation and repose have run. Accordingly, enforcement of the FFP in this case would prevent plaintiffs from bringing their claims at all.

practice plaintiffs challenge.  Thus, section 77v(a) does not independently, by its terms or by implication, forbid a corporation from selling its shares subject to the condition that a purchaser agree to prosecute 1933 Act claims in federal court.  (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 63.)

Second, United States Supreme Court precedent forecloses a holding that section 77v(a) creates a right to sue in state court that is made unwaivable by section 77n. (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at pp. 64-66.)

In *Rodriguez de Quijas v. Shearson/American Express, Inc.* (1989) 490 U.S. 477, 479, 482 (*Rodriguez*), the Supreme Court held the prohibition in section 77n "on waiving 'compliance with any provision' of the Securities Act" does not apply to certain procedural provisions, including the "grant of concurrent jurisdiction without the possibility of removal" because "the right to select the judicial forum and the wider choice of courts are not such essential features of the Securities Act that [section 77n] is properly construed to bar any waiver of these provisions."  (*Rodriguez*, *supra*, 490 U.S. at pp. 478, 481-483; see also *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 65 [following *Rodriguez*].)  In *Rodriguez*, the Supreme Court "construed section 77n the same way it had construed the antiwaiver provision of the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq. (1934 Act)) in *Shearson/American Express, Inc. v. McMahon* (1987) 482 U.S. 220 . . . (*McMahon*).  (*Rodriguez*[, *supra*, 490 U.S.] at pp. 482-483[.])"  (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 65.)  The 1934 Act granted exclusive jurisdiction over statutory violations to the federal district courts and forbade "[a]ny condition, stipulation or provision binding any person to waive compliance with any provision" of the statute.  (§§ 78aa, 78cc(a).)  As the Supreme Court explained in *McMahon*, however, because the jurisdictional provision did not "impose any duty with which persons trading securities must 'comply[,]' " the antiwaiver provision does not apply.  (*McMahon*, *supra*, 482 U.S. at p. 228; see also *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 65.)

7

Plaintiffs assert that *Rodriguez* and *McMahon* are distinguishable because they concerned pre-dispute arbitration agreements entered separately from the purchase of stock. We are not persuaded that these distinctions render the statutory analysis described above inapplicable here.

First, plaintiffs contend that these agreements are materially different from an FFP such as the one at issue here because they increase rather than restrict the options available to plaintiffs by offering an additional forum. We do not find this argument persuasive.

In *Rodriguez*, the court reasoned that grant of concurrent jurisdiction in the 1933 Act, as opposed to only federal court jurisdiction in the 1934 Act, did not render *McMahon* distinguishable because arbitration agreements, "like the provision for concurrent jurisdiction, serve to advance the objective of allowing buyers of securities a broader right to select the forum for resolving disputes, whether it be judicial or otherwise." (*Rodriguez*, *supra*, 490 U.S. at p. 483.) That is, at least until a party agrees to enter an arbitration agreement, the option to enter an arbitration agreement provides a new and different forum in which the case can be heard without foreclosing other options. The same cannot be said of an FFP, which constitutes a contractual choice between the two statutory fora, rather than a replacement of the statutory fora with a different forum. But in both cases, the contract, whenever executed, limits the number of fora available. In the arbitration context, this limitation is more pronounced—a plaintiff agrees not to bring suit in any of the statutorily authorized fora. (See *Rodriguez*, *supra*, 490 U.S. at pp. 479, 486 [compelling arbitration].) In the FFP context, a plaintiff may still bring suit in the federal courts, a forum that Congress expressly deemed suitable.

The *Rodriguez* court's discussion of whether the option to enter an arbitration agreement furthers the purposes of the 1933 Act by broadening the purchaser's ex ante right to select a forum has no bearing on the present case, where we are asked to assess only whether there is a statutory impediment to waiving access to a statutorily authorized

8

forum. Moreover, nothing in the statutory analysis in either *Rodriguez* or *McMahon* suggests that the time at which the contract was entered is material to the legal question of whether a statutory right is waivable. It is the statutory analysis that dictates the result here. We cannot see how the distinctions drawn by plaintiffs support their construction of the statute.

Second, plaintiffs argue that the *Rodriguez* and *McMahon* courts' statutory analyses were inflected by a need to reconcile the relevant securities acts with the Federal Arbitration Act. But the controlling portions of the analysis, for our purposes, rest on the independent determination that the antiwaiver provisions do not encompass the relevant jurisdictional provisions, which include the antiremoval provision before us. (*Rodriguez*, *supra*, 490 U.S. at p. 482 [finding no "sound basis" to construe antiwaiver provision to apply to procedural provisions, including the jurisdictional provision that included the antiremoval provision]; *McMahon*, *supra*, 482 U.S. at p. 228 [antiwaiver provision did not preclude waiver of right to bring suit in federal court because jurisdictional provision was not a "provision" imposing a duty with which a person trading in securities must " 'comply' "].)

Finally, plaintiffs contend that we should cast a "suspicious" eye on FFP's because they are of recent vintage. (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 58 ["In recent years, some corporations preferring to litigate 1933 Act claims in federal court adopted forum-selection provisions designating federal courts as the exclusive forums for those claims."].) Plaintiffs assert that there can be no explanation for a Congressional decision to enact the antiremoval provision while permitting FFP's to exist. The thrust of this argument is that Congress would not have left an "obvious loophole" in the statute, so the statute should be interpreted not to permit FFP's. At oral argument, plaintiffs projected that the judicial enforcement of FFP's will lead to their widespread adoption such that, as a practical matter, the antiremoval provision in the 1933 Act will be rendered ineffectual. But the Supreme Court has construed the statute to permit

9

arbitration agreements—forum-selection agreements that foreclose the access to either of the statutorily authorized fora. We are unable to materially distinguish arbitration agreements from FFP's, in light of the statutory construction underpinning the Supreme Court decisions. It is immaterial whether FFP's are a relatively novel phenomenon. To the extent a new practice requires a new statute, it is for the legislature, not the courts, to craft it.

**C.** ***Whether Delaware Law Permitting Corporations to Adopt FFP's Violates the United States Constitution***

In *Salzberg v. Sciabacucchi* (Del. 2020) 227 A.3d 102 (*Salzberg*), the Delaware Supreme Court held that FFP's are facially valid under Delaware law. (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 58.) In reaching that conclusion, the *Salzberg* court held that section 102(b)(1) of the Delaware General Corporation Law (DGCL) authorizes corporations to adopt FFP's by permitting certificates of incorporation to contain " '*any* provision for the management of the business and the conduct of the affairs of the corporation,' and '*any* provision creating, defining, limiting and regulating the powers of the corporation, the directors, and the stockholders, or any class of the stockholders, . . . if such provisions are not contrary to the laws of [Delaware].' " (*Salzberg*, *supra*, 227 A.3d at pp. 113, italics added.) Further, the *Salzberg* court held that DGCL section 115, which precludes Delaware corporations from including provisions in their certificates of incorporation that prohibit bringing "internal corporate claims" in the courts of Delaware, does not invalidate an FFP because 1933 Act claims are not "internal corporate claims" covered by the statute. (*Id*. at pp. 116-117, 120, 130-132.)

Plaintiffs contend that Delaware's statutory scheme, as interpreted in *Salzberg*, violates the Supremacy Clause and the Commerce Clause of the United States Constitution. Following the persuasive analysis in *Restoration Robotics*, we reject both arguments. (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at pp. 66-74.)

10

**1.** *Supremacy Clause*

Plaintiffs contend that the "Delaware statutory structure"—DGCL sections 102(b)(1) and 115, together—violates the Supremacy Clause of the United States Constitution by treating state law claims more favorably than federal claims. Plaintiffs do not argue that Delaware has closed its courts to federal claims. Instead, plaintiffs argue that if Delaware prevents corporations from entering forum selection agreements excluding the Delaware forum as to some state law claims, Delaware must also prevent corporations from entering forum selection agreements excluding the Delaware forum as to analogous federal claims, otherwise it disfavors federal law. The *Restoration Robotics* court persuasively rejected the same argument. (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at pp. 71-74.)

The Supremacy Clause provides that federal laws are the "supreme Law of the Land; and the Judges in every state shall be bound thereby, any thing in the Constitution or laws of any State to the Contrary notwithstanding." (U.S. Const., art. VI, cl. 2.) "Under the [S]upremacy [C]lause, '[a] state may not discriminate against rights arising under the federal laws.' (*McKnett v. St. Louis S.F. Ry. Co.* (1934) 292 U.S. 230, 234 . . . [(*McKnett*)].) The [S]upremacy [C]lause prohibits states from 'dissociat[ing] themselves from federal law because of disagreement with its content,' and from refusing to allow state court jurisdiction over federal claims while permitting state court jurisdiction over 'similar state-law actions.' (*Howlett By and Through Howlett v. Rose* (1990) 496 U.S. 356, 371, 378 . . . (*Howlett*).)" (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 70.) Nor may a state, "having made the decision to create courts of general jurisdiction that regularly sit to entertain analogous, suits, . . . shut the courthouse door to federal claims that it considers at odds with local policy." (*Haywood v. Drown* (2009) 556 U.S. 729, 740, fn. omitted; see also *McKnett*, 292 U.S. at p. 234 ["The plaintiff is cast out because he is suing to enforce a federal act. A state may not discriminate against rights arising under federal laws."]; *Howlett*, *supra*, 496 U.S. at pp. 377-378.)

Here, as in *Restoration Robotics*, Delaware is not "refusing to entertain a federal claim" but is "allowing corporations and shareholders to agree to forum selection provisions that limit 1933 Act claims to federal courts." (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 74.) Plaintiffs' extrapolation from the Supremacy Clause would compel Delaware to invalidate contractual agreements that would require 1933 Act claims to be brought in federal court unless it permits litigation of "internal corporate claims" of Delaware corporations under DGCL section 115 outside of the Delaware state courts.[5] In *Restoration Robotics*, the court held that this challenge rests on a false analogy between 1933 Act claims and claims as to which the Delaware forum cannot be waived under DGCL section 115. (*Restoration Robotics*, *supra*, 78 Cal.App.5th at pp. 71-73.)[6] In addition, we reject plaintiffs' premise that permitting contracting parties to agree that federal claims must be filed in the federal courts is comparable to a derogation of federal claims or rights. (See *id*. at p. 74.)

### 2. *Commerce Clause*

"The Commerce Clause of the United States Constitution provides that 'Congress shall have power . . . [¶] To regulate Commerce . . . among the several states.' (U.S. Const., art. I, § 8, cl. 3.) This grant of power to Congress 'has long been understood to

---

[5] Plaintiffs have not explained why the appropriate remedy for the alleged Supremacy Clause violation would be to invalidate both DGCL section 102(b)(1), the general provision that controls here, and DGCL section 115, the exception that does not apply here.

[6] Plaintiffs here identify no Delaware state law claim they believe to be analogous to a 1933 Act claim. Thus, as in *Restoration Robotics*, plaintiffs have not substantiated the necessary premise that Delaware treats any analogous state law claim more favorably than federal 1933 Act claims. (*Restoration Robotics*, *supra*, 78 Cal.App.5th at pp. 71-73 [rejecting analogy between DGCL section 111 claims and 1933 Act claims]; cf. *Salzberg*, *supra*, 227 A.3d at p. 129 [identifying DGCL section 111 claims as an "example" for the proposition that claims arising from the purchase of stock could arguably fall within the scope of section 115].)

12

have a "negative" aspect that denies the States the power unjustifiably to discriminate or burden' interstate commerce." (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 66.)

"If a state statute '1) directly regulates interstate commerce; 2) discriminates against interstate commerce; or 3) favors in-state economic interests over out-of-state interests . . . it violates the Commerce Clause per se' and is struck down 'without further inquiry.' [Citation.] If a state statute ' "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental," ' we apply a balancing test and uphold the statute ' "unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." ' (*Edgar v. MITE Corp.* (1982) 457 U.S. 624, 640 . . . (*Edgar*).)" (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 66.)

Plaintiffs argue that DGCL section 102(b)(1) burdens interstate commerce by giving Delaware the power to determine whether a shareholder can file suit in any state court to resolve 1933 Act claims. Further, plaintiffs contend that DGCL section 102(b)(1) "strip[s] shareholders of their right to choose the forum to adjudicate 1933 Act claims." Alternatively, plaintiffs argue that DGCL section 102(b)(1) burdens interstate commerce "by permitting corporations to unilaterally condition the interstate sale of securities on the loss of the right to state court fora." These arguments do not establish a violation of the Commerce Clause.

At the outset, it is not clear that plaintiffs' commerce clause theory rests on a challenge to state action. (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 67-68.) The basis for the trial court's declination of jurisdiction here is the parties' agreement— Arlo's public offering of shares subject to the FFP in its certificate of incorporation and plaintiffs' acceptance by purchasing shares. Delaware did not regulate away plaintiffs' option to bring 1933 Act claims in state court; it simply permits Delaware corporations to condition the public offering of shares on purchasers' agreement to bring 1933 Act claims in federal court.

13

Moreover, plaintiffs' substantive argument depends on the proposition that the burdens FFP's impose on interstate commerce are clearly excessive in relation to their putative local benefits. (See *Edgar*, *supra*, 457 U.S. at p. 640.) Plaintiffs have not supported that essential proposition.

As the *Restoration Robotics* court explained, FFP's promote Delaware's interest in " 'promoting stable relationships among parties involved in the corporations [it] charter[s].' " (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 69.) "By limiting the litigation of 1933 Act claims to federal courts, FFP's 'allow for consolidation and coordination of [1933 Act] claims to avoid inefficiencies and unnecessary costs' " that might otherwise arise when different plaintiffs file cases in both state and federal fora, benefitting "companies and shareholders alike." (*Ibid.*) In so doing, FFP's "advance Delaware's policies with respect to corporation" by promoting certainty, predictability, uniformity, prompt judicial resolution of corporate disputes, and judicial efficiency. (*Ibid.*)

Against these local benefits, plaintiffs speculate that requiring shareholders to bring 1933 Act claims in federal court (without geographic limitation) substantially burdens interstate commerce, such as by potentially impacting share prices. On this record, we agree with the *Restoration Robotics* court's assessment that "[a]ny burden on interstate commerce . . . is slight compared to the benefits." (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 69.)

*Edgar*, on which plaintiffs principally rely, does not support a different result. There the Illinois Business Take-Over Act granted the Illinois Secretary of State authority to review and reject tender offers, provided that the target company was "a corporation or other issuer of securities of which shareholders located in Illinois own 10% of the class of equity securities subject to the offer, or for which any of three conditions are met: the corporation has its principal executive office in Illinois, is organized under the laws of Illinois, or has at least 10% of its stated capital and paid-in surplus represented within the

14

State." (*Edgar*, *supra*, 457 U.S. at p. 627.) The *Edgar* court held that the Illinois statute "unduly burden[ed] interstate commerce in violation of the Commerce Clause." (*Id*. at p. 630.) Although "[s]tates have traditionally regulated intrastate securities transactions," the Illinois statute was substantially different in that it "directly regulate[d] transactions which take place across state lines." (*Id*. at p. 641, fn. omitted.) "[T]he Illinois statute [was] a direct restraint on interstate commerce and . . . [had] a sweeping extraterritorial effect. Furthermore, if Illinois may impose such regulations, so may other States; and interstate commerce in securities transactions generated by tender offers would be thoroughly stifled." (*Id*. at p. 642.)

Here, in contrast, plaintiffs' complaint is that Delaware should, but does not, prohibit Delaware corporations from including FFP's in their certificates of incorporation. Plaintiffs do not suggest that Delaware has directly regulated interstate commerce and cannot show that Delaware has encouraged or required corporations to bind shareholders to FFP's.[7] Simply, Delaware's permissive approach to FFP's bears no resemblance to Illinois's direct regulation of tender offers.

## D. *Whether the FFP is Valid*

Plaintiffs appropriately do not dispute that the operative FFP is valid under Delaware law (see *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 75; *Salzberg*, *supra*, 227 A.3d at pp. 113-114), but argue that we should decide the FFP's validity under

---

[7] Plaintiffs' contention seems to be that Delaware is required to prohibit FFP's. At the same time, plaintiffs argue that Delaware burdened interstate commerce by "influenc[ing] the conditions" attendant to the purchase of shares. To do what plaintiffs say is required, Delaware would have to affirmatively "influence the conditions" attendant to the purchase of shares by prohibiting corporations from including a condition that they would otherwise, if left to their own devices, see fit to include in at least some cases. Moreover, this intervention seems just as likely to influence "share[]" "value" as Delaware's current permissive approach.

15

California law instead. We join *Restoration Robotics* in holding that Delaware law applies. (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at pp. 74-75.)

"Under the internal affairs doctrine, California courts recognize that the law of the state of incorporation applies to an action that concerns the 'internal affairs' of corporations. [Citation.] '[I]nternal affairs' are 'matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders.' [Citation.] As a general matter, the validity of a certificate of incorporation, including the validity of its provisions, is a type of internal affair that is likewise governed by the law of the state of incorporation. [Citations.]" (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 74-75.)

Plaintiffs contend that adopting an FFP is not an internal affair because, under *Salzberg*, the 1933 Act claims regulated by the FFP are not internal affairs claims. Plaintiffs' reliance on *Salzberg* is misplaced, because plaintiffs conflate California's internal affairs doctrine with "internal corporate claims" under DGCL section 115. We apply California choice-of-law principles to decide whether to apply Delaware or California substantive law to evaluate the validity of the FFP. (See, generally, *Restoration Robotics*, *supra*, 78 Cal.App.5th at pp. 74-75.) Applying these choice-of-law principles, the validity of Arlo's certificate of incorporation involves the type of internal affairs as to which California courts ordinarily apply the law of the state of incorporation—in this case, Delaware. (See *id*. at p. 75.) Plaintiffs have not identified any reason to deviate from the ordinary practice here.

Moreover, *Salzberg* did not address whether the adoption of an FFP is an internal affair under any body of law, but whether the 1933 Act claims that an FFP requires a plaintiff to bring in federal court are "internal corporate claims." (*Salzberg*, *supra*, 227 A.3d at pp. 116-117, 120.) The adoption of an FFP may be an internal affair, even if the claims regulated by an FFP may not be.

16

Because plaintiffs do not contest the validity of Arlo's certificate of incorporation under Delaware law, we turn to whether California law renders the otherwise valid FFP unenforceable.  (See *Drulias*, *supra*, 30 Cal.App.5th at p. 703.)

## E.  *Whether the FFP is Enforceable*

California law governs a California court's decision to enforce a forum-selection provision.  (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 76.)  Plaintiffs argue that the FFP is unenforceable under California law for two overlapping reasons:  (1) the FFP was contained in a contract of adhesion and was outside of their reasonable expectations; and (2) the FFP is unconscionable.  (See *Drulias*, *supra*, 30 Cal.App.5th at p. 708 [a forum-selection clause contained in a contract of adhesion is " 'enforceable absent a showing that it was outside of the reasonable expectations of the weaker or adhering party or that enforcement would be unduly oppressive or unconscionable' "].)  Even if the FFP is generally enforceable under California law, plaintiffs argue that the FFP is unenforceable in this case because Arlo delayed in bringing its forum non conveniens motion.  As discussed above, contrary to plaintiffs' construction of sections 77v(a) and 77n, the FFP does not implicate any unwaivable rights, whether under California law or otherwise, so plaintiffs bore the burden of establishing that enforcement would be unreasonable.  (See *id*. at p. 703 [plaintiff bore burden where plaintiff's claims were "not based on unwaivable rights created by California statutes"].)

First, we identify no error in the trial court's determination that the FFP was within plaintiffs' reasonable expectations.  Second, on the undisputed facts, plaintiffs did not demonstrate that the FFP is unconscionable.  Third, we identify no error in the trial court's determination that it was reasonable to enforce the FFP in this case notwithstanding defendants' delay in seeking enforcement.

### 1.  *Reasonable Expectations*

The weaker or adhering party may successfully challenge an adhesive forum-selection provision where it is outside of their reasonable expectations.  (*Drulias*, *supra*,

17

30 Cal.App.5th at p. 708.)  Here, the trial court held that "the FFP is consistent with Plaintiffs' reasonable expectations at the time they chose to purchase Arlo stock.  At that time, Plaintiffs knew or should have known that Arlo was a Delaware corporation and that, consistent with Delaware law, its Amended and Restated Certificate of Incorporation was binding on shareholders.  [Citation.]  Arlo's registration statement and prospectus informed shareholders of the [FFP.]  [Citation.]  Consequently, Plaintiffs should have expected to litigate in federal court if FFP[']s were upheld by the Delaware Supreme Court."  We uphold the trial court's determination.[8]

Plaintiffs argue that the FFP was beyond their reasonable expectations at the time they purchased shares because FFP's are novel, the FFP here was included among other voluminous and prolix documents, they expected the 1933 Act to protect their right to bring suit in state court without the possibility of removal, and the *Salzberg* decision holding FFP's facially valid under Delaware law had not yet been issued.  Plaintiffs cite no authority in support of their argument, which is a direct challenge to the First District's reasoning in *Restoration Robotics*.  (See *Restoration Robotics*, *supra*, 78 Cal.App.5th at pp. 76-77, fn. omitted ["In other words, according to Wong, an ordinary investor should not be expected to pore over a registration statement or otherwise investigate a company's certificate of incorporation, and any investor who takes the time to do so should not expect to be bound by a novel provision in the certificate of incorporation.  The weakness of these arguments is reflected in Wong's failure to cite any authority to support them."].)  We find *Restoration Robotics* persuasive.

In *Drulias*, "a shareholder sued a Delaware corporation and its directors in California state court alleging that they had breached their fiduciary duties in approving a merger.  (*Drulias*, *supra*, 30 Cal.App.5th at p. 700[.])"  (*Restoration Robotics*, *supra*, 78

_____

[8] It is immaterial to our analysis whether our review is for abuse of discretion or substantial evidence because we would sustain the trial court's order under either standard.  (See *Drulias*, *supra*, 30 Cal.App.5th at p. 704.)

18

Cal.App.5th at p. 77.) The defendants filed a motion to dismiss based on a forum-selection bylaw that they had unilaterally adopted without notice to the shareholders simultaneously with the adoption of the merger agreement. (*Drulias*, *supra*, 30 Cal.App.5th at pp. 702, 707-709; *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 77.) The Court of Appeal held that the forum-selection bylaw was within the shareholders reasonable expectations when he purchased stock, even though it did not exist at the time, because the shareholder knew or should have known that the company was a Delaware corporation whose directors were empowered by Delaware law to amend corporate bylaws unilaterally and should have expected that the corporation would prefer to litigate in Delaware. (*Drulias*, *supra*, 30 Cal.App.5th at p. 708; *Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 77.)

Here, as in *Restoration Robotics*, the "FFP presents an even stronger case for enforcement than the provision in *Drulias* in some respects: although the plaintiff in *Drulias* should have expected the creation of a forum selection provision, there was no such provision when he bought his shares. [Citation.] Here, however, the FFP was made public in an amendment to the registration several weeks before the IPO, when it became effective." (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 77.)

We share the *Restoration Robotics* court's reluctance to hold that an investor does not reasonably expect the certificate of incorporation to include a term that was disclosed to investors in the required disclosures. (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 77.) Moreover, while novelty may have caused plaintiffs to anticipate litigation as to whether the FFP could be enforced, it does not mean that they should expect that it would not be enforced. (*Id.* at pp. 77-78.) Plaintiffs have not articulated why the enforcement of the FFP was beyond their reasonable expectations when they purchased their stock.

### 2.    *Unconscionability*

"For a contract term to be unenforceable as unconscionable, it must be both procedurally and substantively unconscionable. (*Armendariz v. Foundation Health*

19

*Psychare Services, Inc.* (2000) 24 Cal.4th 83, 114 . . . .) Procedural unconscionability arises from ' " 'oppression' " or " 'surprise,' " ' while substantive unconscionability arises from ' " 'overly harsh' " or " 'one-sided results.' " ' (*Ibid*.) ' " ' "Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' [Citations.] 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." ' " ' [Citation.] '[T]he more substantively oppressive the contract term[,] the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.] Whether a contract is unconscionable is 'highly dependent on context.' [Citation.]" (*Restoration Robotics*, *supra*, 78 Cal.App.5th at p. 78.)

Plaintiffs argue that because the FFP was part of an adhesive contract—plaintiffs were not able to negotiate the terms of the certificate of incorporation—the FFP is procedurally unconscionable. Plaintiffs argue that the FFP is substantively unconscionable because plaintiffs forfeited their right to control forum selection, as between state and federal court, without receiving any benefit.

While the *Restoration Robotics* court expressed doubt as to the proposition that the terms of a certificate of incorporation are procedurally unconscionable because they are adhesive, it ultimately rested its holding on the proposition that it is not substantively unconscionable to require a prospective shareholder to waive access to a state forum, without restricting the shareholder's ability to file suit in federal court. (*Restoration Robotics*, *supra*, 78 Cal.App.5th at pp. 79-80.) We agree with the *Restoration Robotics* court's holding. Absent a preliminary finding that plaintiffs have an unwaivable right to select a forum of their choosing, there is nothing to distinguish this forum-selection provision from any other enforceable forum-selection or arbitration provision. Put differently, plaintiffs challenge the very enterprise of selecting an undisputedly adequate

20

forum by contract as intrinsically unconscionable because it reduces the number of fora in which a plaintiff can later file suit. We reject that challenge.

### 3. *Unavailability of the Alternate Forum and Unreasonable Delay*

Enforcement of a forum-selection provision may nonetheless be unreasonable where the forum selected is unavailable or unable to accomplish substantial justice. (See *Drulias*, *supra*, 30 Cal.App.5th at p. 707; *Korman v. Princess Cruise Lines, Ltd.* (2019) 32 Cal.App.5th 206, 216; *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496.) A defendant may also lose the right to enforce the forum-selection provision by failing to seek enforcement within a reasonable time. (See *Trident Labs, Inc. v. Merrill Lynch Commercial Finance Corp.* (2011) 200 Cal.App.4th 147, 155 (*Trident*); *Global Financial Distributors Inc. v. Superior Court* (2019) 35 Cal.App.5th 179, 193.) Accordingly, plaintiffs contend that defendants' delay in filing their forum non conveniens motion made it unreasonable to enforce the FFP because the statute of repose or statute of limitations made the federal forum unavailable by the time the trial court heard defendants' motion. On this record, however, we find no fault with the trial court's determination that enforcing the forum-selection provision was not made unreasonable by the timing of defendants' motion or the unavailability of the alternate forum.

As a threshold matter, the running of the statute of limitations in the alternate forum, without more, does not categorically foreclose enforcement of a forum-selection provision; rather, the reasonableness of enforcement requires consideration of the specific context of a case.[9] A "plaintiff cannot avoid the forum he had contracted to accept

---

[9] A defendant asserting the inconvenience of a forum on equitable rather than contractual grounds must show the present availability of a suitable alternative forum. (See *Wang v. Fang* (2021) 59 Cal.App.5th 907, 918, 920.) But "[s]uch caution is not warranted, however, when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause." (*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.* (2013) 571 U.S. 49, 66, fn. 8 (*Atl. Marine*).) "When a case involves a mandatory forum selection clause, it will usually be

simply by failing to adhere to its procedural requirements." (*Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1303, fn. 12 (*Olinick*); see also *Sun v. Advanced China Healthcare, Inc.* (9th Cir. 2018) 901 F.3d 1081, 1091-1092; *Atl. Marine*, *supra*, 571 U.S. at p. 66, fn. 8.)

In *Olinick*, the Court of Appeal affirmed a trial court order enforcing a forum selection clause and a choice of law provision in connection with an age discrimination suit. (*Olinick*, *supra*, 138 Cal.App.4th at pp. 1289-1290.) The court held "that *provided* Olinick has an adequate remedy for his age discrimination claim in the selected forum, the forum selection clause does not violate California's public policy against age discrimination" and, in light of the substantive rights available to Olinick in the alternative forum, that the alternative forum "affords Olinick an adequate forum for his age discrimination claims." (*Id*. at pp. 1303, 1305.) Noting that Olinick had argued in the trial court that his rights would not be protected in the alternative forum because his age discrimination claims were time-barred under that forum's law, the court declined to make Olinick's failure to adhere to the forum's requirements a basis to avoid the forum he had contracted to accept. (*Id*. at p. 1303, fn. 12.) Where, as here, the forum plaintiffs initially agreed to was available when the plaintiff chose to file in elsewhere, the subsequent expiration of the statute of limitations and/or repose does not render enforcement of the forum selection clause categorically unreasonable.

Accordingly, we turn to plaintiffs' contention that defendants unreasonably delayed seeking enforcement of the FFP. In determining that defendants "brought their motion within a reasonable time[,]" the trial court found that defendants "consistently asserted their objection based on the FFP. Defendants first included their objection in the Joint Case Management Statement on March 25, 2019, approximately 3 months after this

given effect unless it is unfair or unreasonable. [Citation.] Moreover, a court will normally reject any claims that the chosen forum is unfair or inconvenient." (*Richtek USA, Inc. v. uPI Semiconductor Corp.* (2015) 242 Cal.App.4th 651, 661.)

action was filed. Defendants reiterated their position in the Arlo Defendants' motion to stay on May 6, 2019, and again in the parties' Joint Case Management Statement of April 30, 2021, when the stay of this action was lifted. Thereafter, Defendants raised their objection by motion at the earliest reasonable opportunity consistent with the court's scheduling order. The delay in filing the motion to dismiss was due to the fact that the Federal Action was not resolved until April 19, 2021." The trial court rejected any inference that plaintiffs had been misled, finding that "Defendants expressly advised Plaintiffs of their intention to move to dismiss this action if *Sciabacucchi* was overturned. Defendants followed through on their promise in a timely fashion once the stay in this action was lifted. Moreover, Defendants have not extensively litigated in this forum or conducted substantial discovery. . . . [T]he court has yet to hear any dispositive motions in this case." The trial court thus based its ultimate determination on factual findings sufficiently grounded in the record.[10]

Nor, alternatively, do we discern any abuse of discretion in the trial court's reasoning on these facts. (See *Drulias*, *supra*, 30 Cal.App.5th at p. 704.) In their unique context, these cases presented difficult case management issues. In the early stages of litigation, there were competing class actions pending in state and federal court. At the same time, the Delaware high court had yet to rule on the validity of FFP's, and neither party was willing to cede the issue without litigation. The trial court elected to stay these cases in favor of the federal litigation, which had the potential to resolve these cases without the need for further litigation in the state forum. But because the federal litigation was resolved by a class action settlement from which these plaintiffs requested exclusion, this litigation ultimately went forward. By that time, the statute of limitations

---

[10] Again, we need not decide whether our review is for abuse of discretion or substantial evidence because we would sustain the trial court's order under either standard. The trial court's ultimate determination flows from its predicate factual findings, which are supported by the record.

23

governing plaintiffs' time to file suit in federal court had elapsed, absent a basis for extending the limitations period, but the statute of repose had not.[11]

The ultimate question here is whether the apparent expiration of the statute of limitations during a stay of litigation in this unique procedural context renders it unreasonable to enforce a valid forum-selection provision in favor of defendants who brought their forum non conveniens motion in a reasonable time, and against a plaintiff who violated the provision as part of an ultimately unsuccessful challenge to the provision's validity. That question is not easily answered—to vindicate the defendant's contractual right is to deprive the plaintiff of a resolution of its substantive claims on the merits. But it was plaintiffs who made the tactical choice to challenge the FFP by breaching it and to risk the unavailability of the alternate forum by pressing on in the face of opposition. We note that it was not defendants' delay alone, reasonable or otherwise, that ultimately exhausted the statute of repose. After the stay lifted, defendants proposed a hearing date on the inconvenient forum motion before the expiration of the statute of repose, but plaintiffs declined. The clearest obstacle to refiling in an alternate forum was, in part, of plaintiffs' own making.

Plaintiffs have not cited any authority that supports a different result. *Trident*, the lone appellate decision they put forward as a comparator, concluded "that when a party, under the terms of a forum selection clause, has the option to litigate in more than one forum, that party cannot choose to extensively litigate in the original forum . . . and

---

[11] The trial court in this case reasoned that the federal forum remained available at the time defendants filed their forum non conveniens motion because the statute of repose had not elapsed and plaintiffs could have pursued an equitable tolling theory to defeat a statute of limitations defense. (See, generally, *California Public Employees' Retirement Sys. v. ANZ Securities, Inc.* (2017) 137 S.Ct. 2042, 2050-2051.) Although plaintiffs do not contend that equitable tolling would have been unavailable in the federal forum, we recognize that the apparent expiration of the statute of limitations created, at least, increased difficulties in prosecuting an action in federal court.

24

then . . . compel the other party to litigate in a different forum. Such circumstances make enforcement of the forum selection clause unreasonable as a matter of law." (*Trident*, *supra*, 200 Cal.App.4th at p. 157.) Such gamesmanship is not apparent here. From the outset of litigation, defendants made clear they intended to seek enforcement of the FFP and litigated only the issue of whether the state court litigation should be stayed before seeking enforcement promptly after the stay was lifted. (Compare *id*. at pp. 151-152 [forum-selection motion filed after 19 months of "extensive[] litigat[ion]," including "substantial discovery," substantive challenges to the pleadings, and the setting and continuance of the trial date].) We will not disturb the trial court's determination that it was reasonable to enforce the forum-selection provision in this case. (See *Olinick*, *supra*, 138 Cal.App.4th at p. 1303, fn. 12.)

### III.   DISPOSITION

We affirm the judgment. Defendants are awarded their costs.

25

_____
LIE, J.


WE CONCUR:




_____
GROVER, ACTING P.J.




_____
DANNER, J.




*Pham et al. v. Arlo Technologies, Inc., et al.*
H049577

26